Argued Nov. 9, decided Dec. 20, 1910. Rehearing denied March 14, 1911.

## O. R. & N. CO. *v.* McDONALD.

[112 Pac. 413.]

RAILROADS—DEED TO RIGHT OF WAY—CONDITION SUBSEQUENT.

1. A conveyance to a railroad reciting that it was made on the condition that the road would construct its line over the premises within two years created a condition subsequent.

RAILROADS—RIGHT OF WAY—PURCHASE.

2. While a railroad may acquire a fee in land by condmenation, yet, where it goes into the market to buy as an ordinary purchaser, it may make its own terms, and may bind itself by conditions subsequent.

RAILROADS—CONVEYANCE OF RIGHT OF WAY—FORFEITURE.

3. Grantors of land to a railroad on condition that the line be constructed over the premises within two years were not estopped from

claiming a forfeiture by voluntarily permitting the grantee to enter on the land and construct its grade.

RAILROADS—RIGHT OF WAY—FORFEITURE.

4. Where, though, under a grant to a railroad conditioned on the building of the road within a specified time, the grantor was entitled to a forfeiture, it appeared that the road was constructed and in operation, the court would decree the road to be entitled to the land on payment of the damages occasioned by the taking thereof.

From Wallowa:   JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit in equity brought by the Oregon Railroad & Navigation Company, a private corporation, against Hector McDonald, and Margaret McDonald, to enjoin defendants from interfering with plaintiff in the construction of its branch line of railway from Elgin to Joseph, where the same crosses defendants' land in Wallowa County.   On September 18, 1905, plaintiff purchased of defendants the right of way for the railroad over their land; the amount so purchased comprising in all about 20 acres and the price paid being $600.   Defendants, however, declined to sell this land until the following clause was inserted in the deed:

"This conveyance is made on the condition that the Oregon Railroad & Navigation Company will construct its line of road over the above described premises within two years from the date hereof."

Plaintiff took possession of the land, and had completed its grade along the whole of it by October, 1907, and thereafter ceased work upon the road.   Thereupon defendants fenced the land at each end, inclosing it with their other fields, and in August, 1908, when work had been resumed on other portions of the road, they posted notices, warning all persons, particularly plaintiff, its agents, and employees, to keep off the premises, and declaring themselves to be the owners and in possession thereof.   Plaintiff brought this suit and secured a preliminary injunction under the protection of which it

proceeded to complete the construction of its line.  On the trial the court rendered a decree for defendants.  Plaintiff appeals.                                          MODIFIED.

For appellant there was a brief over the names of *Mr. William W. Cotton, Mr. Arthur C. Spencer* and *Mr. Thomas H. Crawford* with an oral argument by *Mr. Crawford.*

For respondent there was a brief and an oral argument by *Mr. Turner Oliver.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. Plaintiff's principal contention is that the limitation in the right of way deed from defendants is in legal effect a covenant, and not a condition.  Forfeitures are not favored in law, and the decisions abound in many subtle distinctions indulged in by the courts to avoid their frequently harsh consequences.

Before discussing the various and frequently unreconcilable decisions on this subject, it may be well to recur to elementary definitions:  Littleton defines a condition as follows:

"Also, divers words (amongst others) there be, which by virtue of themselves make estates upon condition; one is the word *'sub conditione.'* "

And Coke, commenting upon this, says:

"This is the most *expresse* and proper condition in deed, and therefore our author beginneth with it."  Coke upon Littleton, § 328.

Sheppard says:

"Amongst these words there are three words that are most proper, which in and of their own nature and efficacy, without any addition of other words of re-entry in the conclusion of the condition, do make the estate conditional, as *'proviso,' 'ita quod,'* and *'sub conditione.'* Touch. *122.

Tested by these definitions, the language employed in the deed at bar would clearly seem to indicate an intent to create a conditional estate defeasible on the failure of the grantee to perform the condition. It is true that the courts in the cases cited by counsel have held that similar language constitutes a covenant, and not a condition, but in most, if not all, of these cases the words of condition were held to be modified or qualified by other language used in the same connection. Thus in *Post* v. *Weu,* 115 N. Y. 361 (22 N. E. 145: 5 L. R. A. 422: 12 Am. St. Rep. 809), where the restriction read, "provided always, and these presents are upon this express condition, that no part of the granted premises shall ever be used or occupied as a tavern," the court held that the language used should be construed as a covenant running with the land, placing this construction upon the ground that the original grantor owned adjoining property which might be depreciated in value by the erection of a tavern in the vicinity. But in that case the grantor had an adequate remedy in equity to protect his estate from the erection of the obnoxious building, while in the case at bar defendants would have no such remedy to compel plaintiff to build its road: *Hawley* v. *Kafitz,* 148 Cal. 393 (83 Pac. 248: 3 L. R. A. (N. S.) 741: 113 Am. St. Rep. 282), was a case where plaintiff executed to defendant a conveyance which contained the following clause:

"This deed is given by the parties of the first part, and accepted by the second party, upon the express agreement of the second party to build, or cause to be built, upon the said premises within six (6) months from the date hereof a dwelling house to cost not less than fifteen hundred ($1,500) dollars. Said agreement being considered by the parties hereto as part consideration for this conveyance."

This was held by the court as a mere covenant, and not a condition subsequent; the court saying:

"There is not only an entire omission on the part of the grantor to use any technical language, such as is ordinarily employed to create an estate on condition subsequent, but there is also an entire absence of any language indicating that, for noncompliance with the stipulation to build, it was the intention of the grantor that the estate granted should be defeated and forfeited. Not only is there no language that would create a condition subsequent, but the language actually employed, 'this deed is upon the express agreement,' implies a personal covenant, and not a condition."

The distinction between the case cited and the one at bar is obvious. In *Ashuelot Nat. Bank* v. *City of Keene,* 74 N. H. 148 (65 Atl. 826: 9 L. R. A. (N. S.) 758), the restriction clause in the deed was as follows:

"Provided, however, and this deed is made upon the express condition, that said premises shall be forever held and used for the purpose of erecting and maintaining a public library building thereon, and for utilizing so much thereof as is not used for library purposes for a public park, and for no other purpose whatever; said grantee to take and enjoy the rents and income therefrom until such reasonable time as the same shall be devoted to the purposes aforesaid."

There had been some prior negotiations between the parties, which were in writing, and the court, taking into consideration these negotiations and the fact that the city was to have the use of the property and the rents and profits therefrom for a reasonable time, held that the language used was intended to create and define a trust rather than to impose a condition subsequent. The fact that the land was conveyed to the city to be used for a public purpose, and therefore as a public trust, was dwelt upon by the court as a circumstance, indicating that a forfeiture was not intended.

It is impossible to discuss within the limits of this opinion all the cases cited by counsel, but, as before observed, it will be found in all that either in the conveyance itself

or in some other instrument leading to it there is language qualifying, modifying, or tending to alter the significance of the alleged words of condition.   There is no case cited, and it is believed that none can be found, where a bald single condition, standing alone as this, has been perverted into a covenant.   The case of *Blanchard* v. *Detroit, Lansing & Lake Michigan R. Co.,* 31 Mich. 43 (18 Am. Rep. 142), is an instructive one.   In that case a deed was made in consideration of $500, and the covenant to build a depot "hereafter mentioned."   Thereafter it was set forth that the conveyance "is made upon the express condition" that the company shall erect and maintain on the land conveyed a station house "suitable for the convenience of the public," and that one train "each way shall stop at such depot or station each day, and that freight and passengers shall be regularly taken at such depot."   The company failed to build such depot and the grantor attempted to compel a specific performance, claiming, as plaintiff does here, that the clause quoted constituted a covenant.   The court say:

"The question whether there is a limitation or a condition, or whether there is a condition precedent or subsequent, or whether what is to be expounded, is a condition or covenant or something capable of operating both ways, very frequently becomes very perplexing in consequence of the uncertain, ambiguous, or conflicting terms and circumstances involved; and the books contain a great many cases of the kind and not a few of which are marked by refinements and distinctions which the sense of the present day would hardly tolerate.   Where, however, the terms are distinctly and plainly terms of condition, where the whole provision precisely satisfies the requirements of the definition, and where the transaction has nothing in its nature to create any incongruity, there is no room for refinement and no ground for refusing to assign to the subject its predetermined legal character.   In such a case the law attaches to the act and ascribes to it a definite significance, and the parties cannot be heard

to say, where there is no imposition, no fraud, no mistake, that, although they deliberately made a condition, and nothing but a condition, they yet meant that it should be exactly as a covenant."

So in the case at bar. We have an instrument in which the clause in controversy is couched in the exact language of a condition subsequent, plain, unambiguous, and unqualified, and we would pervert both law and language to hold that these apt words mean something different from their ordinary import.

The case of *Gray* v. *Blanchard,* 8 Pick. (Mass.) 284, is in point. Gray conveyed a parcel of land adjoining his dwelling house by a deed, containing this restriction:

"Provided, however, this conveyance is upon the condition, that no windows shall be placed in the north wall of the house aforesaid, or of any house to be erected on the premises within thirty years from the date hereof."

It will be noticed that the contingency provided against was of trivial character; the only possible effect of placing a window on the north wall being that such window might overlook the grantor's premises and invade his privacy. But the court held the condition good, and declared a forfeiture, saying:

"The words are apt to create a condition. There is no ambiguity, no room for construction, and they cannot be distorted so as to convey a different sense from that which was palpably the intent of the parties. The word 'provided' alone may constitute a condition, but here the very term is used which is often implied from the use of other terms. 'This conveyance is upon the condition,' can mean nothing more nor less than their natural import; and we cannot help the folly of parties who consent to take estates upon onerous conditions by converting conditions into covenants."

2. Nor do we see any ground either in law or reason for holding that a railway company cannot bind itself by conditions subsequent. It is true that it may acquire

a fee in the land by condemnation, but, when it goes into the market to buy as an ordinary purchaser, it would seem that it ought to be permitted to make its own terms: *Mills* v. *Seattle & M. Ry. Co.*, 10 Wash. 520 (39 Pac. 246) ; *Nicoll* v. *New York & Erie R. Co.*, 12 N. Y. 121, and *Blanchard* v. *Detroit R. Co.*, 31 Mich. 43 (18 Am. Rep. 142), are railroad cases, and in each of them a contract containing conditions subsequent is held valid. In the case at bar the plaintiff, having induced defendants to execute the conveyance, which they otherwise declined to execute, by writing in the provision in question, is not in a position to urge that such provision was one which it had no right to accept.

3. It is urged that defendants are estopped from urging a forfeiture by reason of the fact that they voluntarily permitted plaintiff to enter upon the land and construct its grade, and the case of *Roberts* v. *Northern Pacific R. R. Co.*, 158 U. S. 1 (15 Sup. Ct. 756: 39 L. Ed. 873), is cited, among others, in support of this contention. It is true that where one stands idly by and permits a railway corporation to enter upon his land and make valuable improvements thereon he will be held to have acquiesced in their act, but this only applies to cases where the entry was not under a specific agreement. Here the entry was made under a contract, which by its terms practically authorized a re-entry by the grantors at the expiration of two years if a road was not constructed within that period. There was no misleading plaintiff to its prejudice. Both parties knew from the beginning the possible consequences of delay. Defendants were unwilling to sell a strip of land across their farm and allow the railroad company to hold it indefinitely, to the detriment of the balance of their holdings and to the possible exclusion of some other line of road. They wanted the road built within two years or they wanted their land back. Plaintiff, feeling confident that it could complete the road

within that time, took the deed with the condition annexed to it. Owing primarily to the money panic and secondarily to weather conditions, they failed to comply with the conditions which no doubt seemed reasonable enough when the deed was made. Financial stringency has caused many people in this country to forfeit profitable contracts, but the courts cannot compel the beneficiaries of such contracts to be generous and extend the time for performance. We find no reason for holding that defendants have in any way waived this condition. After plaintiff had ceased work, defendants built a fence across that part of the field which had been opened for the purpose of constructing the grade, and, before plaintiff ever attempted to begin work at this point again, they warned the company and its agents that they had taken possession. In this we think that they were within the legal rights and waived nothing.

4. So far, then, we have found that defendants were entitled to a forfeiture and that the land has reverted, but we now recur to the remedy. The situation is anomalous. Plaintiff has constructed its road and has it in operation, thereby performing an important public function for a large and increasing population. It is reasonable to suppose that it is transporting freight and passengers, and, as is the custom of the country, the United States mail. It is to the interest of the public that it should continue to do so, and that the defendants should not be allowed to acquire a portion of its roadbed to the detriment of public travel. The condemnation of land for railway purposes is usually the function of a court of law, but there are in this case such special circumstances as to authorize this court to end the whole litigation at once and forever. The pleadings show that this land is needed for the purposes of a railway, and the evidence shows that the railway is actually there on the ground. Defendants come into court, submit themselves

to the jurisdiction of equity, and ask affirmative relief. Much of the testimony was devoted to showing the value of the land taken, the effect of the taking on the remainder of the tract, and all those things which are usually shown in an action to condemn for a railroad right of way.

Having jurisdiction of this case, we have concluded to assume it for all purposes and to so modify the decree that plaintiff shall take title to the land described in this strip upon the paying to defendants the damage occasioned by such taking, which we assess at $700, and the costs and disbursements of this suit; and that, upon payment of such sum and costs to the clerk of this court, plaintiff be decreed to be the owner in fee for railway purposes of such strip of land.          MODIFIED.