Argued December 8, 1915, reversed January 25, 1916, rehearing denied March 14, 1916.

## JAKEL v. SEECK.

(154 Pac. 424; 155 Pac. 1192.)

**Judgment—Conclusiveness—Legal and Equitable Defenses.**

1. It is well established in this state that a party may rely upon a legal defense in an action at law without being precluded from afterward asserting and setting up his equitable title in an original suit against which the judgment in the law action is no bar.

[As to matters concluded by judgment, see note in **15 Am. St. Rep. 142.**]

**Estoppel—Knowledge of Error in Deed and Failure to Assert Right.**

2. Where a grantee accepts a deed with knowledge that it did not contain a covenant in his favor which he afterward claimed was omitted through fraud, and having acquiesced in the covenants and conditions, and exercised ownership and held possession for several years, he cannot then attack the deed on that ground.

**Deeds—Reformation of Covenants in Deed—Evidence Insufficient to Establish Fraud.**

3. In a suit to reform a deed and to restrain the enforcement of a judgment in ejectment, the covenant providing that the property should revert to the grantors in case livery business was carried on

upon the premises conveyed, evidence *held* not sufficient to establish that the grantors were guilty of fraud in the execution of the deed, or that plaintiff was entrapped into allowing a livery business to be carried on upon the property.

**Deeds—Construction.**

4. Where a forfeiture clause in a deed, taken as a whole, shows that the word "devert" was used in the sense of "revert," and the testimony shows that it was so understood by the party against whom the forfeiture is sought to be enforced, the court will so construe it.

**Deeds—Construction—Forfeiture.**

5. Courts are reluctant to enforce a forfeiture, and will seize on any ambiguity to declare a provision of this character a covenant instead of a condition.

From Linn: WILLIAM GALLOWAY, Judge.

Department 1.  Statement by MR. JUSTICE BENSON.

This is a suit by A. Jakel against F. W. Seeck and H. J. Seeck to reform a deed and to restrain the enforcement of a judgment.  The substance of the complaint is that on June 29, 1907, the defendants were the owners of two separate pieces of real property in the City of Lebanon, upon one of which, known herein as the Grant Street property, they were conducting a livery business, and upon the other a feed business.  On the date mentioned, defendants sold to plaintiff the property upon which the feed business was being conducted for the sum of $3,000.  The conveyance being, in form, a warranty deed, contained the following:

"*Forfeiture Clause.*—The above-described real property shall devert back to the grantors without any cost or expense if any person or persons shall conduct or allow to be conducted any livery business in or on said described premises unless by quitclaim deed or written consent of the grantors of this deed."

It is then alleged that the actual agreement and understanding of the parties was that in consideration of plaintiff's refraining from conducting a livery business upon the premises, purchased by him, the defendants

would refrain from conducting a feed business upon their Grant Street property, and that, if they should thereafter conduct a feed business thereon, then the plaintiff should be permitted to conduct a livery business at the feed barns purchased by him; that plaintiff is an illiterate person of German descent, unable to read or write in any language, and unable to make himself clearly understood in the English language; that by reason of such limitations he was compelled to rely largely upon the honesty of those with whom he dealt, and that these conditions were well known to the defendants; that, for the purpose of defrauding and cheating plaintiff, defendants failed to have inserted as a part of the "forfeiture clause" the following: .

"Except that if F. W. Seeck or H. J. Seeck or their heirs or assigns shall conduct or operate upon their Grant Street property, situated between Main and Park Streets in the City of Lebanon, any feed business, then this forfeiture clause shall be null and void and of no effect, the same being based upon the sole consideration that the grantors herein or their heirs or assigns shall refrain from conducting upon said Grant Street property any feed business."

It is then alleged that by reason of plaintiff's illiteracy he did not know that the portion of the agreement just quoted had been omitted from the deed and did not discover such omission for some time thereafter; that as soon as he learned of the fraud he demanded that defendants correct the writing by inserting the remainder of the agreement therein, but that defendants, taking advantage of his ignorance, induced him to accept a collateral written agreement which was so worded as to be of no value whatever; that for several years thereafter plaintiff conducted a feed business upon the property so purchased by him and refrained from conducting a livery business thereon; that about

December 1, 1911, the defendants, for the purpose of further defrauding and cheating plaintiff, and in order to entrap him into such a position that they could recover the property for a violation of the "forfeiture clause," connived, planned, and did procure one A. J. Newman to lease the premises from plaintiff and thereafter to conduct a livery business thereon; that plaintiff did lease the same and deliver possession thereof to Newman without any restriction as to the nature of the business to be conducted on the property, and that Newman did conduct a livery business thereon in disregard of the terms of the deed; and that defendants thereupon began and conducted to a successful termination an action in ejectment, whereby they obtained a judgment awarding them the possession of the property. Then follow allegations to the effect that plaintiff, by reason of his educational limitations, was unable to make his attorneys clearly understand the nature of his defense, and that therefore no cross-bill in equity was filed therein and no effort made in that action to reform the deed; that at the time of the trial of such action he did not know that defendants had conspired with Newman to secure a lease of the property for the purpose of accomplishing a breach of the condition expressed in the deed; that the defendants in the year of 1908 began to conduct a feed business on their Grant Street property, and have done so continuously since that time; and that plaintiff has always understood that such acts of defendants constituted a waiver of the condition subsequent in the deed and authorized him to conduct a livery business upon his property.

The defendants in their answer, after general denials, pleaded the judgment in the ejectment action in bar of this suit. A reply having been filed thereto, a

trial was had resulting in a decree in favor of plaintiff, from which this appeal is taken.

REVERSED.   SUIT DISMISSED.

For appellants there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Mr. N. M. Newport,* with an oral argument by *Mr. Mark V. Weatherford.*

For respondent there was a brief and an oral argument by *Mr. M. Vernon Parsons.*

MR. JUSTICE BENSON delivered the opinion of the court.

1. There are some 26 assignments of error, but we do not regard it necessary to consider more than 1 or 2 of them, as practically every question of law involved in the consideration of the case has already been passed upon by this court in the case of *Seeck* v. *Jakel,* 71 Or. 35 (141 Pac. 211, L. R. A. 1915A, 679). There is no merit in the plea that this suit is barred by the action at law, since this court has repeatedly held that, under the statute which allows an equitable defense by cross-bill in actions at law, a party may rely upon a legal defense in an action without thereby being precluded from afterward asserting his equitable title in an original suit: *Hill* v. *Cooper,* 6 Or. 181; *Spaur* v. *McBee,* 19 Or. 76 (23 Pac. 818); *South Portland L. Co.* v. *Munger,* 36 Or. 457, 462 (54 Pac. 815, 60 Pac. 5); *Bowsman* v. *Anderson,* 62 Or. 431 (123 Pac. 1092, 125 Pac. 270).

2, 3. We are therefore to consider the evidence in the case. It is voluminous and hopelessly conflicting. However, if we confine ourselves to the testimony submitted by the plaintiff, we discover that he was not misled as to the contents of the deed. It was read to him by the scrivener, and he then noted the fact that

the writing was silent as to any restriction upon the grantors in conducting a feed business upon their Grant Street property. In answer to a question by his attorney, he says:

"Well, when the deed was read to me I objected a little about it on account of it being just that in alone and not putting the others in, on account of the feed proposition.

"Q. What did they tell you?

"A. He told me, he says, 'Well, you are protected,' and then I left it go at that, I thought it was all right, I didn't say any more."

The evidence further discloses that on the same day that the deed was executed plaintiff gave defendants his note for $500 as payment on the purchase price of the property, and the deed was then placed in escrow in a local bank, and nothing further was said or done by either party until October 1st, at which time plaintiff demanded from defendants some written assurance that they would not conduct a feed business at their Grant Street property, and such a writing was then executed, which, through a blunder on the part of the scrivener, was so phrased as to be valueless, and on the next day the full purchase price was paid and the deed delivered and recorded. After about 4½ years had elapsed, during which time the plaintiff conducted a feed business on the premises in controversy, he entered into a written lease of the property with Newman, in which there were no restrictions as to the nature of the business to be conducted thereon. Newman, shortly after taking possession, began to do a livery business, and about six months later defendants began their action to recover possession of the property.

We find no evidence in the record which establishes plaintiff's contention that defendants conspired fraud-

ulently to get Newman to lease the premises in order
to bring about a forfeiture of the title.  The only evi-
dence upon this point is that of Newman himself, who
says:

"I asked him if he would lease barn and sell his roll-
ing stock.  He said he would sell his rolling stock, but
he asked me such a price that I couldn't afford to pay
it.  I told him that I could not pay that, it was too
much money.  He asked me why I didn't go lease the
feed barn down at the depot.  I told him that I had saw
Jakel and tried to lease the barn, and he wanted $45 a
month rent, and I was about to make the deal with him
and he backed out.  Then, two or three days later, I
saw him again, and we was talking, and he wanted $50
per month, so I just laid $50 in his hand and tied him
up."

We are unable to find in this testimony any evidence
of fraudulent purpose.  Nor are we able to find in
the record evidence that there was ever any agreement
between the parties to the effect that conducting a feed
business by the defendants upon their Grant Street
property should render the forfeiture clause in the
deed void.  It follows that the plaintiff has failed to
make a case entitling him to the relief for which he
prays.  If this conclusion works a hardship upon the
plaintiff, he has only himself to blame.  He accepted
the deed with full knowledge of its contents and con-
ditions.  He acquiesced in these conditions for several
years without complaint, and, when he permitted the
conducting of a livery business upon the premises, he
knew the hazard he was incurring.  The courts can-
not make new contracts for parties, nor relieve them
from obligations deliberately assumed.

The decree of the lower court is reversed and the
suit dismissed.          REVERSED.   SUIT DISMISSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and
MR. JUSTICE BURNETT concur.

Denied March 14, 1916.

## ON PETITION FOR REHEARING.

(155 Pac. 1192.)

*Mr. M. Vernon Parsons,* for the petition.

*Messrs. Weatherford & Weatherford* and *Mr. N. M. Newport, contra.*

Department 1. MR. JUSTICE MCBRIDE delivered the opinion of the court.

4. The petition for rehearing discusses at some length the evidence in the case, but has not changed in any way our views as expressed in the original opinion. Counsel, however, makes the additional contention that, as the word "devert" is not found in any dictionary, we cannot assume that it is synonymous with "divert" or "revert," and that it is, in effect, meaningless. From this premise he argues that, as forfeitures are not favored in law, and should be strictly construed, we should either reject the reverter clause wholly, or construe it as a covenant instead of a condition. But the question here is not as to the meaning of a particular word, but as to the meaning and intent of the clause taken as a whole, and, viewed in this light, there can be no question but that it was used in the sense of "revert," and the testimony shows that it was so understood by plaintiff, who admits that he objected to the clause at the time, but finally waived his objection and said, "Let it go at that."

5. Courts are always reluctant to enforce a forfeiture, and will seize upon any ambiguity in a provision of this character in a deed to declare it a covenant instead of a condition: *Oregon R. & N. Co.* v. *McDonald,*

.58 Or. 228 (112 Pac. 413, 32 L. R. A. (N. S.) 117, note);
*Voris* v. *Renshaw,* 49 Ill. 425; *Wier* v. *Simmons,* 55
Wis. 643 (13 N. W. 873), and many other cases.    The
language of the court in the case last cited is as follows:

"The rule is well settled that conditions subsequent
which work a forfeiture of the estate are not favored
in the law, and no language will be construed into such
a condition contrary to the intent of the parties when
such intent can be derived from a consideration of the
whole instrument, or from the circumstances, attending
the execution thereof; nor will the language used be
construed into such a condition subsequent, when any
other reasonable construction can be given to it."

Now, there can be no contention as to the intent of
the parties in the adoption of the clause providing for
a forfeiture in case the plaintiff or his assigns carried
on a livery-stable on the property purchased; the in-
tent is obvious.    The fact that plaintiff at first objected
to the provision indicates that he understood its pur-
port, and the fact that he waived the objection and
agreed, to use his own language, to "let it go at that,"
indicates that he assented.    Nor is there anything in
Newman's testimony which indicates that defendants
assented to a different use of the premises.    He offered
to negotiate with them for the lease of their livery-
stable, and they declined to deal with him for that, and
suggested that he lease the feed barn; but there does
not appear in the testimony any evidence of a sug-
gestion from them that he should use the premises for
any other purpose than a feed barn.

This court, like every court, is reluctant to enforce
a forfeiture, especially one of this character, and has
sought diligently for some legal reason to avoid it, but
it is not within its power to make a new contract for

79 Or.—32

the parties or to relieve the plaintiff from the consequences of the contract he has made for himself.

The petition is denied.

REVERSED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BENSON concur.