[No. B138714. Second Dist., Div. Five. Aug. 15, 2001.]

ELLA S. HIRSHFIELD et al., Plaintiffs and Appellants, v.
S. ANDREW SCHWARTZ et al., Defendants and Respondents.

## COUNSEL

Greines, Martin, Stein & Richland, Marc J. Poster and Barbara S. Perry for Plaintiffs and Appellants.

Hanger, Levine & Steinberg, Marc S. Shapiro and Helen M. Kim for Defendants and Respondents.

## OPINION

**WILLHITE, J.**[*]—In this quiet title action, plaintiffs appeal from the trial court's refusal to grant an injunction compelling the removal of certain encroachments by defendants on plaintiffs' residential property. The court granted the defendants an interest in plaintiffs' land in order to protect defendants' use of the disputed areas. The court labeled that interest "an easement." However, the court recognized that it granted defendants the exclusive right to use the areas in dispute. At issue are: (1) whether the trial court applied the correct test in deciding to deny the injunction; and (2) whether recent appellate decisions holding that a prescriptive easement for exclusive use may not be awarded in residential boundary disputes apply to an interest, labeled "an easement," which was created in equity to protect an encroacher's use of another's land.

We hold that the relative hardship doctrine of *Christensen v. Tucker* (1952) 114 Cal.App.2d 554 [250 P.2d 660] (*Christensen*), states the proper test when determining whether to grant an injunction ordering removal of encroachments from another's land.[1] We confirm that when the trial court properly denies such an injunction, it has the power in equity to grant the encroacher affirmative relief by fashioning an interest to protect the encroacher's use of the disputed land. We also hold that the protective interest

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]The doctrine we refer to as "relative hardship" is the equitable balancing required by *Christensen* and related decisions. The case law and commentaries use various other labels, such as " 'balancing of equities' " (*Scheble v. Nell* (1962) 200 Cal.App.2d 435, 438 [19 Cal.Rptr. 375] (*Scheble*)), "balancing conveniences" (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 156, p. 835 (Witkin)), and "comparative injury" (3 Powell on Real Property (1994) Easements and Licenses, § 34.09, p. 34-101 (Powell)). For consistency, we will call it the "relative hardship doctrine."

at issue here was created in equity and was not a prescriptive easement. As such, decisions which bar the creation of exclusive prescriptive easements do not apply. Instead, we review the judgment to determine whether the court abused its discretion in fashioning the protective interest that it called an easement. We conclude that the court did not abuse its discretion, and affirm the judgement.

## FACTS AND PROCEDURAL HISTORY[2]

In this quiet title action, plaintiffs and appellants Ella S. Hirshfield and Ruth C. Hirshfield appeal from the judgment entered for defendants and respondents S. Andrew Schwartz and Amy T. Schwartz.[3] The Hirshfields are elderly sisters who have lived together in their Bel-Air home since 1940. The Schwartzes are husband and wife who bought the home next door to the Hirshfields in 1979. The Hirshfields' house sits on a lot nearly three-fourths of an acre in size. The Schwartzes' lot is more than 40,000 square feet.[4] When the Hirshfields moved into their home, the property line between their lot and the lot later bought by the Schwartzes was not clearly marked. Sometime during the 1950's, the Schwartzes' predecessor in interest built a swimming pool in the backyard and a chain link fence running from the street to a point about halfway down the properties. Thereafter the Hirshfields planted a row of eugenia trees by the fence for privacy.

Both the Schwartzes and Hirshfields assumed that the chain link fence marked their property line. Between 1979 and 1996, the Schwartzes made several improvements to their backyard. They extended the chain link fence down the presumed property line, built waterfalls, a koi pond and stone deck, and added a putting green and a sand trap. After a car careened through their front yard, the Schwartzes built a block wall to keep their children safe while playing. The wall was constructed to be exceptionally strong, using concrete and the largest "rebar" available.[5]

Sometime in the mid- to late-1980's, the Hirshfields met Douglas Himmelfarb, an avid horticulturist. The three became close friends and, by 1991,

---

[2]In accord with the usual rules on appeal, we state the facts in the manner most favorable to respondents. (*Aceves v. Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 507 [156 Cal.Rptr. 41, 595 P.2d 619], overruled on other grounds by *Privette v. Superior Court* (1993) 5 Cal.4th 689, 696 [21 Cal.Rptr.2d 72, 854 P.2d 721].)

[3]For ease of reference, we will refer to respondents S. Andrew Schwartz and Amy T. Schwartz as the Schwartzes and to appellants Ella S. and Ruth C. Hirshfield as the Hirshfields. The Hirshfields sued in two capacities—as individuals and as trustees of their separate, eponymous, living trusts. When we refer to them, we include those trusts where applicable.

[4]We take judicial notice that an acre is 43,560 square feet. (Evid. Code, § 452, subd. (h); *Newport v. Hatton* (1924) 195 Cal. 132, 155 [231 P. 987].)

[5]We presume the testimony referred to the steel rods commonly used to reinforce concrete. (*Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 265, 268 [241 Cal.Rptr. 706].)

the Hirshfields designated Himmelfarb as their heir. He moved into their home sometime after the 1994 Northridge Earthquake. For many years, the Hirshfields had maintained a garden. Thanks to Himmelfarb's efforts, their backyard has become a botanical showplace and is home to a wide variety of exotic plants and trees. For the past 10 years, these gardens have been the Hirshfields' main source of pleasure.

In January 1997, Himmelfarb commissioned a survey of the Hirshfields' boundary with the Schwartzes' lot. The survey revealed that two sections of land used by the Schwartzes (parcels 1 and 3) were in fact on the Hirshfields' property. One section of land used by the Hirshfields (parcel 2) in fact belonged to the Schwartzes. Parcel 1 is a 32.5-square-foot triangle of land near the front of the Schwartzes' property. The Schwartzes' block wall encroaches on it. The area is steeply sloped and used mostly for setback and landscaping. Parcel 3 is a 217-square-foot triangle of land near the bottom of the Schwartzes' property. It is mostly level, with a slight upslope. Certain of the Schwartzes' improvements encroach upon this parcel: a small portion of the sand trap; extensive underground water and electrical lines that run along the chain link fence; and several motors that run the waterfalls and the swimming pool recirculation, including a large motor installed underground in a concrete and iron enclosure. Parcel 2 is a 47-square-foot pyramid-shaped area. It is steeply sloped and is used by the Hirshfields for setback and landscaping.

In September 1997, the Hirshfields sued the Schwartzes. Their complaint included causes of action to quiet title, for declaratory relief and for trespass based on the Schwartzes' encroachments on parcels 1 and 3.[6] The Schwartzes' answer denied the claims and raised various affirmative defenses, including laches and the existence of an easement by prescription "or otherwise."[7]

A bench trial was held May 17-20, 1999. Ruth Hirshfield and Himmelfarb testified at trial that the Hirshfields needed access to parcel 1 in order to build a circular driveway. As to parcel 3, they planned to build a greenhouse for exotic plants.

Himmelfarb admitted that the circular driveway could be built without removing the block wall on parcel 1. However, removing a three-foot section

---

[6] They also alleged that the Schwartzes had harmed certain trees. They sought damages both as part of the trespass claim and in a separate cause of action under Civil Code section 3346. The trial court found for the Schwartzes on those claims. The Hirshfields do not challenge those findings on appeal. The Hirshfields' complaint also included a nuisance cause of action, which was dismissed during the trial.

[7] The Schwartzes also cross-complained against appellants for trespass and nuisance, but dismissed the cross-complaint during trial.

of the wall would improve visibility from the proposed driveway. Ruth Hirshfield testified that even before learning she and her sister owned parcels 1 and 3, she had planned to build a greenhouse. However, she had not investigated whether a permit was required, and how large the setback area had to be. She did not know how close to the property line she planned to build, how large a greenhouse she wanted, or whether a flat piece of ground was required in order to build. Her belief in the suitability of parcel 3 was based on Himmelfarb's recommendation. Himmelfarb himself had contacted an Indonesian company about building a teakwood greenhouse. Nonetheless, at trial he had no supporting evidence and could provide few details about the plans. He testified that parcel 3 was the only possible site for a greenhouse on the Hirshfields' property. However, he also admitted that before learning that the Hirshfields owned parcels 1 and 3, he had originally planned to build an aluminum greenhouse costing $7,500.

In addition to the evidence discussed above, the court viewed the disputed parcels with the consent of the parties. Apart from stating that it had viewed the disputed parcels, the court's observations were not reported and are not part of the record.

On November 23, 1999, applying the relative hardship doctrine of *Christensen, supra,* 114 Cal.App.2d 554, the court entered a statement of decision in favor of the Schwartzes. The court credited the evidence showing that they innocently believed the chain link fence marked their property line. Concerning the Hirshfields' evidence—in particular, Himmelfarb's testimony—about the need to build a greenhouse and a circular driveway, the court found it insubstantial. Although the Schwartzes produced no evidence of the cost of relocating their various motors and utility lines, the court inferred from the nature of those items that the cost would be significant. In contrast, parcels 1 and 3 had limited value to the Hirshfields unless they removed a row of shrubs which they needed for privacy. Further, parcel 3 amounted to less than 1 percent of the Hirshfields' property. While there were significant equities on both sides, the court believed that the balance tipped in the Schwartzes' favor. The court therefore determined that the Hirshfields had failed to carry their burden of proof for injunctive relief on the quiet title, trespass and declaratory relief claims.

In addition to denying the injunction, the court protected the Schwartzes' use of parcels 1 and 3 by granting them an interest in those parcels. Labeling that interest "an easement," the court ruled that the easement would terminate when the Schwartzes either transferred the property or no longer lived there. Further, the Schwartzes could not add to the encroachments on those parcels. The court awarded the Hirshfields an unrestricted easement in parcel

2. Finally as monetary damages, the court ordered the Schwartzes to pay the Hirshfields the fair market value of parcels 1 and 3, less the fair market value of parcel 2, as determined by an appraiser. The appraiser valued parcel 1 at $425, parcel 2 at $600, and parcel 3 at $23,000. Based on these appraisals, the damages were $22,825. The court entered judgment to that effect.

On appeal, the Hirshfields contend that in denying their claim for injunctive relief, the court applied the wrong standard under the relative hardship doctrine. Further, they maintain that there was no evidence of the costs the Hirshfields would bear from relocating their encroachments. Finally, they believe that the court erred in awarding the Schwartzes a prescriptive easement for the exclusive use of parcels 1 and 3. We will reject their claims, and affirm the judgment.

## DISCUSSION

### 1. *The Trial Court Properly Applied the Relative Hardship Doctrine*

■ The Hirshfields sought an injunction compelling removal of the Schwartzes' encroachments on parcels 1 and 3. The trial court denied the request, relying on the relative hardship doctrine. The court's reasoning tracked the analysis of *Christensen*, which has been described as a "definitive opinion" on the subject. (11 Witkin, *supra*, Equity, § 156, at p. 836.) The Hirshfields contend that the decision in *Fairrington v. Dyke Water Co.* (1958) 50 Cal.2d 198, 200-201 [323 P.2d 1001] (*Fairrington*), modified the *Christensen* formulation. In particular, they claim that to deny an injunction to remove encroaching structures, *Fairrington* requires "irreparable injury" to the trespasser. The decision in *Christensen*, they maintain, requires a less stringent showing—a showing of "greatly disproportionate" hardship. The relevant case law reveals, however, that the distinction noted by the Hirshfields is a mere matter of phrasing, not substance or application.

■ California courts have long applied the relative hardship doctrine in determining whether to grant an injunction to enjoin a trespass by encroachment on another's land. (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 575-576 [199 Cal.Rptr. 773, 676 P.2d 584] (*Warsaw*); *Dolske v. Gormley* (1962) 58 Cal.2d 513 [25 Cal.Rptr. 270, 375 P.2d 174] (*Dolske*); *Fairrington, supra,* 50 Cal.2d at pp. 200-201; *Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 237-239 [251 Cal.Rptr. 49] (*Field-Escandon*); *Donnell v. Bisso Brothers* (1970) 10 Cal.App.3d 38, 44-46 [88 Cal.Rptr. 645]; *Miller v. Johnston* (1969) 270 Cal.App.2d 289, 306, 307 [75 Cal.Rptr. 699]; *Scheble, supra,* 200 Cal.App.2d at pp. 437-438; *Christensen, supra,* 114

Cal.App.2d 554, 562-563; see 11 Witkin, *supra*, Equity, § 156, at pp. 835-837; 6 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 1546, pp. 153-155.) Under this doctrine, once the court determines that a trespass has occurred, the court conducts an equitable balancing to determine whether to grant an injunction prohibiting the trespass, or whether to award damages instead. (11 Witkin, *supra*, Equity, § 156, at p. 835.)

The decision in *Christensen* presents an authoritative discussion of the doctrine. In *Christensen*, defendant's cement curb and driveway encroached on a portion of plaintiff's land. The trial court quieted title in defendant to that portion, but the court of appeal reversed. The appellate court held that even though the trial court had the power to grant affirmative relief that protected the defendant's use of plaintiff's property, that relief should extend no farther than what was reasonably necessary to do so. Since an easement would have sufficed to protect defendant's use of the land, the judgment went too far by quieting title instead. (*Christensen, supra,* 114 Cal.App.2d at p. 563.)

The court discussed the test to be used when deciding whether to enjoin a trespass caused by an encroachment. Overarching the analysis is the principle that since the defendant is the trespasser, he or she is the wrongdoer; therefore, "doubtful cases should be decided in favor of the plaintiff." (*Christensen, supra,* 114 Cal.App.2d at p. 562.) To deny an injunction, three factors must be present. First, the defendant must be innocent. That is, his or her encroachment must not be willful or negligent. The court should consider the parties' conduct to determine who is responsible for the dispute. Second, unless the rights of the public would be harmed, the court should grant the injunction if the plaintiff "will suffer irreparable injury . . . regardless of the injury to defendant." Third, the hardship to the defendant from granting the injunction "must be *greatly disproportionate* to the hardship caused plaintiff by the continuance of the encroachment and this fact must clearly appear in the evidence and must be proved by the defendant. . . ." (*Id.* at pp. 562-563, italics added.)

The Hirshfields argue that *Fairrington* changed the third element of the *Christensen* analysis—"greatly disproportionate" hardship to the encroacher. In *Fairrington*, the plaintiff sought a mandatory injunction to force the defendant to remove a sign from plaintiff's land. The trial court denied the injunction, reasoning that the sign provided a "substantial benefit" to defendant's business. The Supreme Court reversed because the "substantial benefit" to defendant's business was irrelevant. "The doctrine of balancing of conveniences is often invoked as a defense in a suit for an injunction where the plaintiff, seeking to vindicate a technical and insubstantial right

would impose an *unusual hardship* upon the public or the defendant. Deprivation of a substantial benefit, however, falls short of the imposition of *substantial hardship*. This is more than a verbal distinction. When a court of equity balances conveniences to determine that an injunction, otherwise warranted, should be withheld, its action approaches an exercise of the right of eminent domain in favor of a private person. [Citations.] Thus, proof of *irreparable injury* is a necessary element of a defense based upon a balancing of conveniences. [Citation.]" (*Fairrington, supra,* 50 Cal.2d at p. 200, italics added.)

While *Fairrington* mentioned "irreparable injury," it did not mean to create a test different from that of *Christensen.* For the proposition that the trespasser must prove irreparable injury, *Fairrington* cited *Wright v. Best* (1942) 19 Cal.2d 368, 386-387 [121 P.2d 702] (*Wright*). (*Fairrington, supra,* 50 Cal.2d at p. 200.) *Wright* speaks of balancing the relative hardships between the parties. It notes that the plaintiff should be denied an injunction if he seeks to enforce a technical and insubstantial right which would "result in *unusual hardship* to the defendant or the public." (*Wright, supra,* 19 Cal.2d at p. 386, italics added.) When discussing the application of those principles, *Wright* refers to the defendant's "allegations of irremedial injury . . . ." (*Id.* at p. 387.) Thus, *Wright* uses the phrase "irremedial injury" as interchangeable shorthand for a defendant's claim of "unusual hardship." Relying on *Wright, Fairrington* intended the same type of interchangeable use—"unusual" or "substantial hardship" being interchangeable with "irreparable injury."

The decision in *Dolske, supra,* 58 Cal.2d 513, which relies on *Christensen, Fairrington* and *Wright,* further illustrates the point. In *Dolske* the defendant built a fence along the boundary with the plaintiff's property. The plaintiff contended that the fence interfered with her easement for a driveway over the defendant's property. The defendant cross-complained for an injunction to make the plaintiff remove certain encroachments on the defendant's property—a support pillar for a front porch, the eaves of the plaintiff's roof, and a gas meter and pipes. The trial court entered judgment for the defendant on both actions, ordering the plaintiff to remove her encroachments.

On appeal, the Supreme Court held it was error to order the removal instead of awarding money damages "where said encroachments are causing little or nominal damage . . . and the cost of their removal would be proportionately [*sic*][8] great . . . . And while no direct evidence is contained in the record as to the probable expense and inconvenience to Mrs. Dolske of the removal of the encroachments, this court may take judicial

---

[8]We assume the court meant to say "disproportionately."

notice [citation] of the fact that removal of the porch pillar, gas pipes and meters, roof eaves and other structures . . . would involve *considerable expense as well as disfigurement of the Dolske house* [citation], *which might well be characterized as 'irreparable injury' to cross-defendant.* [Citations.]" (*Dolske, supra,* 58 Cal.2d at p. 520, italics added.)

In equating the "considerable expense" and "disfigurement of the Dolske house" to "irreparable injury," the Supreme Court cited both *Fairrington* and *Scheble, supra,* 200 Cal.App.2d at page 438. (*Dolske, supra,* 58 Cal.2d at p. 520.) *Scheble* cites *Fairrington* for the proposition that the defendant in an action to remove encroachments must show "irreparable injury . . . based upon a balancing of conveniences." (*Scheble, supra,* 200 Cal.App.2d at p. 438.) It also acknowledges that *Christensen, supra,* 114 Cal.App.2d 554, states the proper test for resolving such a dispute. (*Scheble, supra,* 200 Cal.App.2d at p. 438.)

Finally, in *Warsaw* the Supreme Court stated that "a court has discretion to balance the hardships and deny removal of an encroachment if it was innocently made and does not irreparably injure the plaintiff, and *where the cost of removal would greatly exceed the inconvenience to the plaintiff by its continuance.* [Citations.]" (*Warsaw, supra,* 35 Cal.3d at pp. 575-576, original italics deleted, italics added.) In support, it cited *Dolske* and other cases.

In short, in discussing the encroacher's burden to defeat an injunction request, some decisions, like *Fairrington,* use the term "irreparable injury." But they do so only as shorthand for the substantial hardship the encroacher must endure when balanced against the lesser hardship to the plaintiff. This is the *Christensen* analysis—precisely the test used by the trial court here.

2. *The Statement of Decision Is Adequate and Supported by the Evidence*

■ The Hirshfields dispute both the adequacy of the court's statement of decision and the existence of evidence supporting certain necessary findings under the relative hardship doctrine. None of their objections is well taken.

The Hirshfields contend that since the court found both parties were equally blameworthy, and that there were significant equities on both sides, the court should have entered judgment in their favor. Although not so phrased, this claim appears to argue that the court's findings are inconsistent. We disagree. Under the relative hardship test, the trial court must identify the competing equities underlying each party's position. It then must balance the relative hardships of granting or denying an injunction to remove encroachments from the plaintiff's property. Here, the court did just that. It concluded that the equities balanced in the Schwartzes' favor. Noting that

certain equities supported the Hirshfields' position, but ultimately were outweighed by those supporting the Schwartzes, is not inconsistent with a proper application of the relative hardship doctrine.

The Hirshfields complain that the Schwartzes produced no direct evidence of the cost to remove their encroachments. The decision in *Dolske, supra,* 58 Cal.2d 513, disposes of this contention. There, in the absence of direct evidence, the Supreme Court judicially noticed the cost to remove certain encroachments. (*Id.* at p. 520.) The trial court here viewed the disputed property, and its observations are evidence which may be used alone or with other evidence to support its findings. Since the court's observations were not reported and are not part of the record on appeal, we must presume that the evidence the court saw was sufficient to support its findings. (*South Santa Clara etc. Dist. v. Johnson* (1964) 231 Cal.App.2d 388, 399 [41 Cal.Rptr. 846] (*Johnson*); see also *S.F. Bay Area Rapid Transit Dist. v. Central Valley Nat. Bank* (1968) 265 Cal.App.2d 551, 555 [71 Cal.Rptr. 430].)

Further, the court heard testimony describing the improvements. On parcel 1, the encroachment was a block wall that the Schwartzes had installed for safety. Constructed to be exceptionally strong, it was made of concrete and the largest rebar available. On parcel 3, the encroachments included a small portion of the sand trap, and several motors for the waterfalls and swimming pool. The largest such motor was installed underground in a concrete and iron enclosure. Also, there were extensive underground water and electrical lines running along the chain link fence. From the inspection and evidence, the court inferred that the cost of removal would be significant. By analogy to *Dolske*, this inference is unassailable.

We also reject the Hirshfields' contention that the court failed to find irreparable injury to the Schwartzes and that no evidence would support such a finding. As previously discussed, there are various verbal formulations of the encroacher's burden of proof, all to the same effect. The court here found that the removal costs to the Schwartzes would be significant. In comparison, the Hirshfields' plans for a greenhouse and circular driveway "lacked weight." Such conclusions constituted a finding that the hardship to the Schwartzes caused by removal of the encroachments would be greatly disproportionate to the hardship caused to the Hirshfields. (*Christensen, supra,* 114 Cal.App.2d at p. 563; see *Warsaw, supra,* 35 Cal.3d at pp. 575-576 [denial of injunction proper where "cost of removal [of encroachment] would greatly exceed the inconvenience to the plaintiff by its continuance"].) In other words, removal would cause the Schwartzes irreparable harm. (See *Dolske, supra,* 58 Cal.2d at p. 520 [cost to remove porch pillar, roof eaves and utility lines might well be irreparable injury].)

The evidence supports such a finding. As to the Hirshfields' proposed driveway to be built on parcel 1, Himmelfarb admitted that it could be built without removing the Schwartzes' block wall. On the other hand, the wall served to protect against a possible safety hazard. As to the greenhouse to be built on parcel 3, Ruth Hirshfield testified that she had planned to build a greenhouse before learning she and her sister in fact owned parcels 1 and 3. She had not investigated whether a permit was required. She also did not know how large the setback area had to be, how close to the property line she planned to build, how large a greenhouse she wanted, or whether a flat piece of ground was required in order to build. Her belief that parcel 3 was suitable was based on Himmelfarb's recommendation. Although Himmelfarb testified that he had contacted an Indonesian company about building a teakwood greenhouse, he had no supporting evidence at trial and could provide few details about the plans. He believed that parcel 3 was the only possible site for a greenhouse on the Hirshfields' property. Yet he also admitted that before learning the Hirshfields owned parcels 1 and 3, he had originally planned to build an aluminum greenhouse costing $7,500. Parcel 3 itself constituted less than 1 percent of the Hirshfields' lot. Regardless, we presume that the evidence obtained from the court's unreported view of the property supports its findings. (*Johnson, supra,* 231 Cal.App.2d at p. 399.)

On the evidence presented, we believe the court properly determined that based on the cost and inconvenience, requiring removal of the improvements on parcels 1 and 3 would cause substantial hardship to the Schwartzes. Yet, continuance of the encroachments would cause little true hardship to the Hirshfields. (See *Warsaw, supra,* 35 Cal.3d at pp. 575-576; *Dolske, supra,* 58 Cal.2d at p. 520; *Christensen, supra,* 114 Cal.App.2d at p. 563.) Stated differently, removal would cause the Schwartzes irreparable injury. (See *Fairrington, supra,* 50 Cal.2d at p. 200.)

The Hirshfields note that the statement of decision did not find that the easement granted was no greater than necessary and failed to expressly account for Himmelfarb's testimony that parcel 3 was the only suitable site for a greenhouse. The court was not required to make an express finding of fact on every disputed factual matter. Since the statement of decision adequately disposes of all the basic issues in the case, it is sufficient. (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118 [54 Cal.Rptr.2d 377].)[9]

Finally, the Hirshfields complain that the court's judgment did not specify a remedy should the Schwartzes fail to pay the assessed damages. However,

---

[9]Although the Hirshfields contend the court improperly failed to find that the easement did not go beyond what was reasonably necessary to protect the Schwartzes' use of the land, they do not contend there is insufficient evidence on that point. Assuming for discussion's sake that they had, we would reject the argument since there is ample evidence that the easement was so circumscribed. The Hirshfields do not dispute that with the encroachments in place, they can make no other practical use of parcels 1 and 3. In duration, the Schwartzes' easement

to create an enforceable judgment, the court need not speculate that one party will not comply. Should there be a breach, the Hirshfields have any number of legal remedies, including seeking termination of the easement. In any event, the Hirshfields did not raise such an objection to the proposed judgment in the court's statement of decision and have therefore waived the objection. (Code Civ. Proc., §§ 632, 634; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1135 [275 Cal.Rptr. 797, 800 P.2d 1227] (*Arceneaux*).)

### 3. *The Easement Awarded the Schwartzes Was a Proper Exercise of the Court's Equity Powers*

 In addition to denying the Hirshfields' request for an injunction ordering removal of the Schwartzes' encroachments, the judgment awarded the Schwartzes an interest in parcels 1 and 3, which the court labeled "an easement." During the hearing on the Hirshfields' objections to the court's proposed statement of decision, the trial court recognized that this easement gave the Schwartzes the exclusive right to use those parcels. Characterizing the interest awarded as an exclusive prescriptive easement, the Hirshfields contend the judgment is contrary to three decisions which hold that such an easement is an unlawful remedy in residential boundary disputes—*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296 [54 Cal.Rptr.2d 284] (*Mehdizadeh*), *Silacci v. Abramson* (1996) 45 Cal.App.4th 558 [53 Cal.Rptr.2d 37] (*Silacci*), and *Raab v. Casper* (1975) 51 Cal.App.3d 866 [124 Cal.Rptr. 590] (*Raab*).

We disagree with the Hirshfields' characterization of the judgment. Instead, as discussed below, the interest which the trial court labeled an easement arose solely from its equity power. Thus, the prescriptive easement decisions cited by the Hirshfields are irrelevant.

### A. *The Easement Was Created in Equity*

When a trial court refuses to enjoin encroachments which trespass on another's land, "the net effect is a judicially created easement by a sort of non-statutory eminent domain." (3 Powell, Easements and Licenses, *supra,* § 34.09 at p. 34-101, fn. omitted; 6 Miller & Starr, *supra,* § 15:46, p. 154; see *Field-Escandon, supra,* 204 Cal.App.3d at pp. 237-238; *Donnell v. Bisso*

---

terminates if the Schwartzes either move from their residence or transfer their property. In scope, it prohibits any further encroachments. Thus, the easement is no greater than that reasonably necessary to protect the Schwartzes' interests based on their prior use of the parcels. (*Christensen, supra,* 114 Cal.App.2d at p. 563.) Further, as with the other evidentiary issues raised on appeal, we must presume that the trial court's unreported view of the property supports the judgment. (*Johnson, supra,* 231 Cal.App.2d at p. 399.)

*Brothers, supra,* 10 Cal.App.3d at p. 46.) However, the courts are not limited to judicial passivity as in merely refusing to enjoin an encroachment. Instead, in a proper case, the courts may exercise their equity powers to affirmatively fashion an interest in the owner's land which will protect the encroacher's use.

The existence of this equitable power in California law was first confirmed in *Ukhtomski v. Tioga Mutual Water Co.* (1936) 12 Cal.App.2d 726 [55 P.2d 1251] (*Ukhtomski*). The defendant water company in that case inadvertently built part of a reservoir, including various pipes and lines, on a small portion of plaintiff's land. The owner sued for trespass and sought an injunction to remove the encroachments. After balancing the hardships, the court refused to grant the injunction and ordered the defendant to pay damages for its continuing trespass. It also went one step further, granting the defendant an easement over the disputed land. The appellate court affirmed, relying on an Oregon decision (*Oregon R. & Navigation Co. v. McDonald* (1910) 58 Or. 228 [112 P. 413]) which awarded fee title to a trespassing encroacher. "If a court of equity has power to give the whole title, surely it can give something less—an easement." (*Ukhtomski, supra,* 12 Cal.App.2d at p. 729.) Accordingly, it was well within the trial court's equity powers to protect the defendant's use of the property by awarding an easement. (*Ibid.*)

*Ukhtomski* was applied in *Baglione v. Leue* (1958) 160 Cal.App.2d 731 [325 P.2d 471] (*Baglione*), where the plaintiffs sought an injunction because the eaves from the defendant's building hung over the property line onto the plaintiff's land. The trial court denied the injunction, awarded the plaintiff damages of $30, created an easement in the defendant's favor, and ordered the defendant to pay $300 for the easement. Relying on *Ukhtomski,* the appellate court held that the trial court had the equitable power to award the easement. (*Id.* at pp. 735-736.)

When *Christensen* held that the trial court erred by quieting title in the encroaching defendant, the appellate court cited *Ukhtomski* for the proposition that the trial court had the power to award the defendant reasonably necessary affirmative relief. (*Christensen, supra,* 114 Cal.App.2d at p. 563.) In the instant case, our review of the record shows that the trial court here relied on its equity powers, not the law of prescriptive easements, when creating the Schwartzes' protective interest in the disputed parcels.

 We begin with perhaps the most fundamental rule of appellate review—that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of

affirmance. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631 [80 Cal.Rptr.2d 378].) The meaning and effect of a judgment are determined according to the rules governing the interpretation of writings generally. If a judgment is ambiguous, we may examine the entire record to determine its scope and effect, including the pleadings. (*Southern Pacific Pipe Lines, Inc. v. State Bd. of Equalization* (1993) 14 Cal.App.4th 42, 49 [17 Cal.Rptr.2d 345] (*Southern Pacific Pipe Lines*).)

■ The Schwartzes' answer raised as an affirmative defense the existence of an "easement, prescriptive or otherwise." In their trial brief on the equitable issues, the Schwartzes asked the court to invoke its equity powers under *Christensen* to deny the Hirshfields' claims and instead allow the Schwartzes to maintain the disputed parcels of land. During closing argument, the Schwartzes asked the court to use its equity powers to either grant them the disputed parcels outright or award them a "permanent easement."

We recognize that the trial court mentioned the term "prescriptive easement" during two posttrial hearings, perhaps resulting in the parties' confusion as to the nature and source of the interest the Schwartzes were granted.[10] However, despite these offhand references to a prescriptive easement, the record demonstrates that the court was actually exercising its power in equity to fashion an interest tailored to protect the Schwartzes' use of parcels 1 and 3. During a March 28, 1999, hearing, the court noted that the Schwartzes established the elements of a prescriptive easement, but did so during a discussion of how the appraiser should value the easement in light of its prospective termination upon the occurrence of certain conditions. During a November 23, 1999, hearing, the court said *Silacci* "does not preclude a prescriptive easement here, particularly when I'm going to order that the [Schwartzes] pay a certain amount to the [Hirshfields]." That statement came as part of a lengthy exchange between the court and counsel for both parties about the applicability of *Silacci* and *Mehdizadeh*, during which the Schwartzes' lawyer reminded the court that the case had been "tried through equity." The trial court concluded the discussion by stating: "[S]itting as a court in equity, I found that a straightforward judgment in favor of the [Schwartzes] would not be equitable, so I've taken the additional step of making it clear that this is a present easement which will end when certain events occur, and I've provided that the [Schwartzes] will pay a significant amount of money to the [Hirshfields]."

The court's comment is significant for what it states both explicitly and implicitly. First, the court expressly stated that it had relied on its equity

---

[10]The Schwartzes also call the interest they were awarded a prescriptive easement.

powers when creating the easement in favor of the Schwartzes. Second, in doing so, it ordered the Schwartzes to pay damages for that protective interest. While the court could properly order payment for that interest under its equity powers (*Baglione, supra,* 160 Cal.App.2d at pp. 735-736; *Ukhtomski, supra,* 12 Cal.App.2d at pp. 728-729), it could not order the Schwartzes to pay for a prescriptive easement. (*Warsaw, supra,* 35 Cal.3d at pp. 574-575 [no compensation or damage award permissible against party acquiring prescriptive easement].) Further, we must interpret the judgment so as to make it valid, and construe it with reference to the law regulating the rights of the parties. (*Southern Pacific Pipe Lines, supra,* 14 Cal.App.4th at p. 57.) Viewed accordingly, the court's decision to make the Schwartzes pay for their protective interest clearly indicates that the court did not grant them a prescriptive easement.

Finally, the trial court's statement of decision provides the court's reasoning on disputed issues and is also our touchstone to determine whether the judgment is supported by the facts and the law. (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718 [30 Cal.Rptr.2d 745].) The statement of intended decision, the statement of decision which the court ultimately signed, and the judgment, all refer to the interest created in favor of the Schwartzes as an "easement," not as a "prescriptive easement." Since the record does not show that the Hirshfields ever objected or sought clarification on this point, we presume the court relied solely on its equity powers, not the laws regarding prescriptive easements, when creating the protective interest which it called an easement. (Code Civ. Proc., §§ 632, 634; *Arceneaux, supra,* 51 Cal.3d at pp. 1133-1135.) Nor can the statement of decision be impeached by the court's oral comments from the bench. (*City and County of San Francisco v. Givens* (2000) 85 Cal.App.4th 51, 54 [101 Cal.Rptr.2d 859]; *Oldis v. La Societe Francaise* (1955) 130 Cal.App.2d 461, 472 [279 P.2d 184].)

### B. *Decisions Restricting the Scope of Prescriptive Easements Are Not Applicable Here*

As noted above, the Hirshfields contend that the Schwartzes' exclusive right to use parcels 1 and 3 violates the holdings of *Raab, Silacci* and *Mehdizadeh.* After examining those decisions, we conclude they do not apply to the equitable protective interest at issue here.

In *Raab,* the defendant built approximately one-third of his home—part of his driveway, various utility lines, and part of his yard and landscaping—on plaintiff's land. The trial court granted the defendant a prescriptive easement for the driveway and utility lines, along with " 'an easement for the maintenance of lawn, fences, shrubs, fruit trees, and landscaping around [defendant's] house . . . .' " (*Raab, supra,* 51 Cal.App.3d at p. 877.) Noting the

differences between an easement and ownership, the appellate court stated that "[a]n exclusive interest labeled 'easement' may be so comprehensive as to supply the equivalent of an estate, i.e., ownership. In determining whether a conveyance creates an easement or estate, it is important to observe the extent to which the conveyance limits the uses available to the grantor; an estate entitles the owner to the exclusive occupation of a portion of the earth's surface. [Citations.]" (*Id.* at p. 876.) Citing to a real property treatise, the court used as an example a conveyance purporting to transfer unlimited use or enjoyment of property, which would amount to an ownership interest. (*Id.* at pp. 876-877.) Noting that the trial court had phrased its judgment in terms of an "easement," the appellate court nonetheless had no doubt that the "easement" was intended to give defendant unlimited use of the yard. Defendant himself did not intend to allow plaintiffs to have access to the yard. The judgment was designed to exclude plaintiffs and create the practical equivalent of an estate. (*Raab, supra,* 51 Cal.App.3d at p. 877.) Therefore, to create such an interest, the appellate court held that defendant needed to prove he owned the land by adverse possession. (*Id.* at pp. 877-878.)

Relying on *Raab,* both *Silacci* and *Mehdizadeh* held that an exclusive prescriptive easement which effectively amounted to ownership could not be awarded in a simple residential boundary dispute where the encroaching landowner was unable to meet the requirements for outright adverse possession. (*Mehdizadeh, supra,* 46 Cal.App.4th at pp. 1305-1308; *Silacci, supra,* 45 Cal.App.4th at pp. 562-564.) In *Silacci,* the parties tried the case on a prescriptive easement theory. (*Silacci, supra,* 45 Cal.App.4th at pp. 561, 564.) The only issue on appeal was the propriety of the trial court's award of an exclusive prescriptive easement. (*Id.* at p. 562.) Under the circumstances, the court held that such an easement was improper. (*Id.* at pp. 562-564.) Relying in part on *Silacci,* the court in *Mehdizadeh* held that "when a claimant cannot satisfy the requirements for adverse possession, the claimant may not receive a prescriptive easement which extends so far that it becomes the equivalent of a fee interest and dispossesses the record title owners of part of their property." (*Mehdizadeh, supra,* 46 Cal.App.4th at p. 1300.)

We find it notable that in *Raab, Silacci* and *Mehdizadeh* there is no mention of a court's power in equity to create a protective interest in favor of an encroacher. Nor is there any discussion of what effect, if any, the rules regarding prescriptive easements might have on the creation of such an equitable interest in land. Instead, by prohibiting a prescriptive easement, which amounts to an unauthorized award of adverse possession, *Raab, Silacci* and *Mehdizadeh* concerned themselves solely with defending the integrity of the adverse possession laws. (See *Mehdizadeh, supra,* 46

Cal.App.4th at p. 1305 [appellate court complained that the trial court had "merged" the concepts of prescriptive easements and adverse possession]; *Silacci, supra,* 45 Cal.App.4th at p. 562 [court said case posed question of law involving difference between adverse possession and prescriptive easements].)[11] Thus, these decisions are not relevant in determining the validity of the equitable protective interest created by the trial court in the instant case. (*Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1121 [66 Cal.Rptr.2d 337].)

It is also significant that the concept of prescriptive easements is nowhere mentioned or discussed in *Christensen, Baglione* or *Ukhtomski.* Rather, they are concerned with the creation of an equitable protective interest in land through the relative hardship doctrine. As distinguished from the power to declare a prescriptive easement, those decisions viewed the trial court's equity powers as the sole and independent source of its ability to award an easement or other protective interest to a defendant after denying a landowner's request for an injunction to remove the defendant's encroachments.

■ The fundamental distinction between a protective interest in equity and a prescriptive easement is illustrated by the differing rationales behind these two theories. Adverse possession and prescriptive easements express a preference for use, rather than disuse, of land. They are designed not to reward the taker or punish the dispossessed, but to reduce litigation and preserve the peace by protecting long-standing possession. (*Warsaw, supra,* 35 Cal.3d at p. 575.) Equity is manifestly different. When a court exercises its equity powers, its principal concern is to promote justice, acting through its conscience and good faith. (*Hart v. Gudger* (1957) 153 Cal.App.2d 217, 232 [314 P.2d 549]; *Lass v. Eliassen* (1928) 94 Cal.App. 175, 178-179 [270 P. 745].)

These two theories—adverse possession/prescriptive easements on the one hand, and equity on the other—are perhaps best distinguished by the role of a party's intent in the court's decisionmaking process. In the relative hardship analysis of *Ukhtomski* and *Christensen,* the encroaching party's innocent intent is paramount. If the party is willful, deliberate, or even negligent in his or her trespass, the court will enjoin the encroachment. The court may refuse to enjoin a negligent encroachment only if there is corresponding contributory negligence by the landowner. (*Christensen, supra,* 114 Cal.App.2d at

---

[11]Since the scope of a prescriptive easement is determined by its historical use (Civ. Code, § 806; *O'Banion v. Borba* (1948) 32 Cal.2d 145, 155 [195 P.2d 10]), and since exclusive easements, while rare, are possible (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 578-579 [110 P.2d 983, 133 A.L.R. 1186]), we believe the holdings of *Silacci* and *Mehdizadeh* may be overbroad. We need not reach that issue, however, and assume for purposes of our discussion that they accurately state the law regarding adverse possession and prescriptive easements.

pp. 562-564.) In contrast, the grant of adverse possession or a prescriptive easement requires not innocent intent, but an intent to dispossess the owner of the disputed property, whether the encroacher is acting deliberately or negligently. (*Gilardi v. Hallam* (1981) 30 Cal.3d 317, 321-322 [178 Cal.Rptr. 624, 636 P.2d 588].) Indeed, an innocent intent may well preclude a finding of adverse possession or of a prescriptive easement: When the trespasser occupies another's land by mistake, with no intention to claim it as his or her own, and instead claims only to the true property line, then the occupier is not acting with the requisite claim of right. (*Ibid.*)

■ Given the disparate policies at play, the disapproval of exclusive prescriptive easements expressed in *Raab, Silacci,* and *Mehdizadeh* does not apply to the judgment here—a judgment that finds its basis in the trial court's denial of an injunction to remove encroachments and an exercise of its equity powers to grant affirmative relief tailored to protect the encroacher's use of the disputed land. Further, nothing in *Ukhtomski, Christensen* or *Baglione* suggests that when exercising its powers in equity, the trial court may grant only a limited easement and no more. Nor do they suggest that the equitable property interest so created is subject to the strict rules of law which govern easements.[12] Indeed, to hold otherwise would be contrary to the very essence and spirit of equity.

■ "Equity or chancery law has its origin in the necessity for exceptions to the application of rules of law in those cases where the law, by reason of its universality, would create injustice in the affairs of men." (*Estate of Lankershim* (1936) 6 Cal.2d 568, 572-573 [58 P.2d 1282] [although rule of law prohibited lawyer, as executor of estate, from recovering legal fees for services on behalf of estate, equitable principles called for departure from that rule].) The object of equity is to do right and justice. It "does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention. 'It has always been the pride of courts of equity that they will so mold and adjust their decrees as to award substantial justice according to the requirements of the varying complications that may be presented to them for adjudication.' [Citation.]" (*Times-Mirror Co. v. Superior Court* (1935) 3 Cal.2d 309, 331 [44 P.2d 547].) "The powers of a court of equity, dealing with the subject-matters within its jurisdiction, are not cribbed or confined by the rigid rules of law. From the very nature of equity, a wide

---

[12]For example, *Ukhtomski* relied on an Oregon decision, *Oregon R. & Navigation Co. v. McDonald, supra,* 58 Or. 228 [112 P. 413], where fee title was granted in equity, noting that if the entire title could pass in equity, then the lesser interest created by an easement was clearly permissible. (*Ukhtomski, supra,* 12 Cal.App.2d at p. 729.)

play is left to the conscience of the chancellor in formulating his decrees . . . . It is of the very essence of equity that its powers should be so broad as to be capable of dealing with novel conditions. [Citation.]" (*Bechtel v. Wier* (1907) 152 Cal. 443, 446 [93 P. 75].) Equity acts " 'in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed.' [Citation.]" (*Wuest v. Wuest* (1942) 53 Cal.App.2d 339, 346 [127 P.2d 934].)

██ From the decisions and policies we have discussed, our final conclusion as to the source and scope of the trial court's power in the present case is clear. True, the trial court used the term "easement" to describe the protective interest it created. Nonetheless, that equitable interest is not necessarily subject to the limitations of prescriptive easements created at law. Instead, as set forth below, the interest created will be affirmed unless it amounts to an abuse of the trial court's discretion. Here, the court did not engage in such an abuse.

## C. *The Schwartzes' Easement Was Not an Abuse of Discretion*

██ Determining that the Schwartzes' easement was created in equity does more than provide a basis for distinguishing *Raab, Mehdizadeh,* and *Silacci*: It also profoundly affects the standard of review. ██ Because the trial court exercised its equity powers when fashioning that interest, we review the judgment under the abuse of discretion standard. (*City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1256 [99 Cal.Rptr.2d 294, 5 P.3d 853]; *Wm. R. Clarke Corp. v. Safeco Ins. Co. of America* (2000) 78 Cal.App.4th 355, 359 [92 Cal.Rptr.2d 709].) Under that standard, we resolve all evidentiary conflicts in favor of the judgment and determine whether the court's decision " 'falls within the permissible range of options set by the legal criteria.' " (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815 [42 Cal.Rptr.2d 459]; *Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831 [284 Cal.Rptr. 839]; *Health Maintenance Network v. Blue Cross of So. California* (1988) 202 Cal.App.3d 1043, 1056 [249 Cal.Rptr. 220].)

██ As discussed above, it matters not whether the Schwartzes' protective interest strictly comports with the law of prescriptive easements. Our task is to decide whether that interest—whatever its name—fell within the trial court's permissible range of options. We believe it did.

Having properly denied the Hirshfields' request for an injunction, the trial court had the power to grant affirmative relief which would protect the

Schwartzes' use of parcels 1 and 3. (*Christensen, supra,* 114 Cal.App.2d at p. 563; *Ukhtomski, supra,* 12 Cal.App.2d at p. 729.) Even so, the relief granted could be no greater than what was reasonably necessary to protect that use. (*Christensen, supra,* 114 Cal.App.2d at p. 563.) The court did not grant the Schwartzes an unrestricted easement. Instead, their rights were limited both in duration and scope. The Schwartzes may not add to their encroachments, and their rights will terminate should they sell or fail to reside in their house. In exchange, the court granted the Hirshfields an unrestricted easement in parcel 2, and ordered the Schwartzes to pay as damages a sum equal to the fair market purchase price of parcels 1 and 3. Although the Schwartzes will have the exclusive right to use parcels 1 and 3, the testimony at trial, as well as the trial court's unreported observations (see *Johnson, supra,* 231 Cal.App.2d at p. 399; see fn. 9, *ante*) constitute substantial evidence to support the trial court's decision. That decision, fashioned on the evidence and equities presented, and narrowly tailored to promote justice, will not be disturbed.

## DISPOSITION

For the reasons set forth above, the judgment is affirmed. Respondents to recover their costs on appeal.

Turner, P. J., and Armstrong, J., concurred.