Filed 8/26/21  Nassir v. Feng CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| FARZIN NASSIR, Individually and as Trustee, etc., | B305184 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC597173) |
| v. | |
| XIAOGANG FENG et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

Early Sullivan Wright Gizer & McRae, Eric P. Early, Stephen Y. Ma and Sophia S. Lau for Defendants and Appellants.

Ecoff Campain & Tilles, Lawrence C. Ecoff and Alberto J. Campain for Plaintiff and Respondent.

_____

Defendants and appellants Xiaogang Feng and Fan Xu (collectively, defendants) challenge the trial court's grant of a permanent injunction requiring them to remove a concrete deck that extends from the back of their home and encroaches on the property of their neighbor, plaintiff and respondent Farzin Nassir. Defendants contend that the trial court erred (1) in failing to find that plaintiff's claims were barred by laches; and (2) in refusing to grant defendants an equitable easement to allow them to keep the deck. We disagree and affirm.

## FACTS AND PROCEEDINGS BELOW

Plaintiff and defendants own adjoining properties in the Mount Olympus neighborhood in the Hollywood Hills in Los Angeles. Plaintiff's "Hercules" property, which he has owned since 2000, is located downhill from the defendants' "Achilles" property,[1] which they purchased in April 2014. A concrete deck originates in the backyard of the Achilles property and extends about 14 feet over the property line and into the back of the Hercules property. The deck is approximately 10 feet tall, made of solid concrete, and a metal fence surrounds the base of the structure.

Plaintiff discovered that the deck encroached on his property as a result of a topographic survey performed on or around September 6, 2012. Plaintiff initiated the survey as a result of separate, unrelated litigation against a previous owner of the Achilles property.

Defendants purchased the Achilles property in April 2014 for $5 million. Feng testified that the scenic view from the

---

[1] The properties are so named because they are located on Hercules Drive and Achilles Drive, respectively.

2

encroaching deck was a principal reason for buying the house. At the time of purchase, the seller provided defendants with disclosures on a standard questionnaire form. In response to a question on whether there were any "[r]eports, . . . studies, surveys or other documents pertaining to" (1) "the condition or repair of the [p]roperty . . . or" (2) "easements, encroachments or boundary disputes," the seller disclosed that a "lot survey" of the property existed, but did not specify that it would show any encroachments or disputes. The record does not contain the lot survey. Defendants did not obtain a copy of the survey, nor did they take any other steps to ascertain the legality of the deck.

On October 8, 2015, plaintiff filed suit, alleging causes of action for trespass and declaratory relief, and requested preliminary and permanent injunctions. Defendants filed a cross-complaint alleging causes of action for quiet title, and declaratory relief for prescriptive and equitable easements.

In August 2017, two years into the current case, plaintiff contacted the Los Angeles Department of Building and Safety (LADBS) to report the encroaching deck. An LADBS inspector found that the deck had been built without permits and issued an order requiring plaintiff to obtain the needed permits. When plaintiff failed to comply, LADBS issued a fine for noncompliance with a new date for correction. According to the inspector, if a property owner does not comply at this stage, the department would ordinarily transfer the case to the city attorney for legal action, including potential criminal charges for noncompliance. In this case, however, LADBS is awaiting the outcome of the litigation before moving forward.

After a bench trial, the court issued a statement of decision finding in favor of plaintiff on all of its causes of action and

denying defendants an easement. The court entered judgment on January 29, 2020 granting a permanent injunction requiring defendants to remove the deck at their expense.

## DISCUSSION

### A. *Laches*

Defendants contend that the trial court erred by failing to find that laches barred plaintiff's claim for injunctive relief. We disagree.

An injunction is an equitable remedy to which the doctrine of laches applies. (See *Committee to Save the Beverly Highlands Homes Assn. v. Beverly Highlands Homes Assn.* (2001) 92 Cal.App.4th 1247, 1266.) Laches bars equitable relief to a plaintiff who has waited an unreasonable time to seek relief when the delay is prejudicial to the defendant. (*Columbia Engineering Co. v. Joiner* (1965) 231 Cal.App.2d 837, 856–857; see also *Danjaq LLC v. Sony Corp* (9th Cir. 2001) 263 F.3d 942, 951.) In general, " 'the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances,' " which we review for substantial evidence. (*Truck Ins. Exch. v. Workers' Comp. Appeals Bd.* (2016) 2 Cal.App.5th 394, 402.) But, where the relevant facts are undisputed, we determine whether laches applies as a matter of law. (*Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.* (2006) 145 Cal.App.4th 1260, 1274.)

The doctrine requires (1) delay in asserting a right or claim (2) which was not reasonable or excusable and (3) which has prejudiced the defendant. (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1157 (*Magic Kitchen*).) "The party asserting laches bears the burden of

4

production and proof on each element of the defense."  (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 282.)

Delay in asserting a claim is typically measured against the relevant statute of limitations for the action.  If the plaintiff's claim "is filed within the analogous state limitations period . . . the strong presumption is that laches is inapplicable." (*Magic Kitchen*, *supra*, 153 Cal.App.4th at p. 1157.)  This presumption may be overcome in exceptional circumstances. (See, e.g., *Holt v. County of Monterey* (1982) 128 Cal.App.3d 797 (*Holt*).)

The requirements of unreasonability and prejudice are "interrelated."  (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 908.)  Generally, a delay is unreasonable when it results in prejudice (see *Brown v. State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1159), and " 'the greater the prejudice, the more timely must be the relief sought.' "  (*In re Marriage of Modnick, supra*, 33 Cal.3d at p. 908.)  To demonstrate prejudice, the claimant can show that she "took actions or suffered consequences that [she] would not have, had the plaintiff brought suit promptly."  (*Danjaq LLC v. Sony Corp.*, *supra*, 263 F.3d at p. 955.)

In this case, plaintiff learned of the encroaching deck around September 2012 and filed suit against defendants three years later, on October 8, 2015.  Thus, plaintiff filed suit within the five-year statute of limitations for an action for the recovery of real property[2] (see Code Civ. Proc., § 318), and defendants

---

[2] Defendants do not claim that the statute of limitations began running at an earlier date when plaintiff *should have*

must overcome a "strong presumption" against the application of laches.  (*Magic Kitchen*, *supra*, 153 Cal.App.4th at p. 1157.)  *Holt*, *supra*, 128 Cal.App.3d 797 provides an example of the circumstances required to overcome this presumption.  In *Holt*, the real party in interest submitted a proposal in 1975 to develop a condominium complex.  (*Id.* at p. 799.)  The county board of supervisors approved the plan in 1977 and granted the developer a use permit in 1979.  (*Id.* at pp. 799–800.)  A few months later, the plaintiff filed suit, alleging that because the county had failed to submit a valid general plan for development of county land, the specific plan for the development of the condominium complex, which was required to conform to the general plan, was invalid.  (*Id.* at p. 800.)  The court held that laches barred the claim.  (See *id.* at pp. 801–802.)  Although the plaintiff had acted within the relevant limitations periods for challenging the validity of a use permit or a tentative subdivision plan, the court nevertheless held that he had unreasonably delayed bringing suit, to the prejudice of the developer.  (*Ibid.*)  The plaintiff knew about the developer's plans as early as 1976, yet he waited two and a half years before making his claim, during which time the developer spent more than $4 million in justifiable reliance on the validity of its plan.  (*Id.* at p. 801.)

Defendants claim that they are similarly positioned to the developer in *Holt*.  They note that they purchased the property during the three-year window between the time plaintiff discovered the encroachment and when he finally filed suit.  If he had acted sooner, they would have known that the deck was illegal and would not have purchased the property.  Thus,

become aware of the encroachment, and we therefore do not consider this possibility.

6

they contend that plaintiff's delay in filing suit unreasonably prejudiced them.

We are not persuaded. Key to the court's decision in *Holt* is that the plaintiff knew of the potential prejudice to the defendant and allowed it to grow greater for two years before finally challenging the validity of the permits. (See *Holt*, *supra*, 128 Cal.App.3d at p. 801.) In this case, by contrast, there is no evidence that plaintiff knew that defendants intended to purchase the property. Additionally, in *Holt*, the developer had good reason to believe that its permits were valid and acted in justifiable reliance on that belief. Here, defendants simply failed to investigate the property boundaries, which had they done would have disclosed the encroachment. Under these circumstances, the trial court did not err by denying defendants' claim of laches.

## B.    *Equitable Easement*

Defendants next claim that the court erred in denying them an equitable easement. We disagree.

In cases involving adjacent property owners where a party has encroached upon the neighbor's property, the neighbor "is generally entitled to a mandatory injunction requiring the defendant to remove the encroachment." (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1003.) In exceptional cases, however, the trial court may deny an injunction and instead grant an equitable easement in favor of the encroacher. *Christensen v. Tucker* (1952) 114 Cal.App.2d 554, the classic authority on this issue, sets out the three requirements that an encroacher must establish to obtain an equitable easement. First, she must be innocent, i.e., the encroachment must not be the result of a willful act or

7

negligence. Second, the granting of the easement must not cause irreparable injury to the other party. Third, the hardship to the encroacher from granting the injunction must be greatly disproportionate to the harm an easement would impose on the other party. (*Id.* at p. 562; see also *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 769.)

We defer to the trial court's factual findings so long as they are supported by substantial evidence. (See *Hirshfield v. Schwartz*, *supra*, 91 Cal.App.4th at p. 772.) We review the trial court's application of the equitable easement doctrine for abuse of discretion. (*Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 19.) Under this standard, we will not disturb the court's decision "as long as there exists 'a reasonable . . . justification, under the law, for the action taken.'" (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.)

Here, the defendants failed to meet the third requirement of demonstrating a disproportionate hardship from the enforcement of an injunction. Because this factor alone is sufficient to justify the trial court's decision, we need not consider whether defendants were innocent,[3] or whether the grant of an easement would cause an irreparable injury to plaintiff.

_____

[3] Although we need not decide the innocence issue, we note that before purchasing the property, the seller gave defendants a standard disclosure form where, in response to a question about whether there were any "[r]eports, . . . studies, surveys or other documents pertaining to" (1) "the condition or repair of the [p]roperty . . . or" (2) "easements, encroachments or boundary disputes," the seller answered "yes," and noted that a "lot survey" of the property existed. Yet defendants failed to obtain a copy of the survey or investigate further.

8

At trial, defendants identified two hardships that they would suffer if the court granted plaintiff's injunction: They would have to pay to remove the deck, and they would lose the scenic view from the deck, thus diminishing the value of their property. Defendants' expert on valuation testified that the loss of the deck would reduce the value of the property by approximately $190,000.[4] As to the cost of removal, the trial court found that defendants had failed to produce any competent evidence. Defendants do not dispute this finding.

The trial court identified three hardships to plaintiff if defendants obtained an equitable easement. First, plaintiff would permanently lose access to the 338 square feet of his land on which the deck sits. Plaintiff's expert estimated the value of this land at $150 per square foot, or $50,700 in aggregate. Defendants do not dispute the accuracy of this estimate. Also, plaintiff has suffered loss of privacy by virtue of the encroaching deck, from which certain parts of plaintiff's home are visible.

The per square foot estimate, however, undervalues the hardship to plaintiff, as it does not take into account the impact of the deck on plaintiff's privacy, the aesthetics or the loss of value of plaintiff's property.

The remaining hardship to plaintiff is more difficult to quantify but no less real. According to LADBS, plaintiff could face criminal liability if the deck is not removed. Defendants contend that the possibility of criminal prosecution is not a real hardship because plaintiff could not be criminally liable for a deck he did not build or maintain. We disagree. Regardless of whether plaintiff would ultimately be vindicated, the mere

---

[4] This is 3.8 percent of the $5,000,000 defendants paid for the property.

9

possibility of criminal prosecution is a hardship to plaintiff.[5] For an equitable easement to be appropriate, the defendants must show that they "will suffer a *greatly disproportionate* hardship from denial of the easement than the presumptively heavy hardship the owner will suffer from its grant." (*Shoen v. Zacarias*, *supra*, 237 Cal.App.4th at p. 20.)

The trial court's conclusion that the balance of hardships favored plaintiff was reasonable; thus, the court did not abuse its discretion by granting the injunction. Although the hardships to defendants in removing the deck are meaningful, they do not outweigh the detriment to plaintiff from allowing the deck to remain in place.

---

[5] Defendants claim that the doctrine of unclean hands should preclude plaintiff from claiming hardships related to the possible LADBS prosecution because plaintiff brought about the threat of prosecution by reporting the potential violation to the LADBS. Unclean hands is an equitable doctrine that prevents a party from asserting a right if he engaged in inequitable or bad faith conduct in acquiring the right. (See *Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 638.) Defendants claim that by reporting to LADBS the encroaching deck, plaintiff "self-inflicted" this hardship. We are not persuaded. As the trial court noted, "[a]sking for [LADBS] to determine whether a structure on one[']s o[w]n property [complies with legal requirements] is not wrongful; it is lawful and should be encouraged. . . . The damage to [p]laintiff was caused by the illegal structure, regardless who reported it."

10

## DISPOSITION

The trial court's judgment is affirmed.  Nassir is awarded his costs on appeal.

NOT TO BE PUBLISHED.


                                        ROTHSCHILD, P. J.

We concur:



CHANEY, J.



CRANDALL, J.*

---

     **\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.