Filed 4/21/26  Evans v. Adderley CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VICTORIA S. EVANS, as Trustee, etc., | D085355 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00045558-CU-OR-CTL) |
| MARY ELIZABETH ADDERLEY, as Trustee, etc., | |
| Defendant and Appellant. | |

APPEALS from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Remanded with directions but affirmed in all other respects; cross-appeal affirmed.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and Megan E. Dawson; Steven L. Victor, Attorney at Law and Steven L. Victor for Plaintiff and Appellant.

Randall Coffee & Humphrey, William D. Coffee and Thuy M. Nguyen, for Defendant and Appellant.

This neighbor dispute arose through no fault of either party.  Mary Elizabeth Adderley, Trustee of the Mary Elizabeth Adderley Trust Dated April 26, 2002, and Victoria S. Evans, Trustee, Victoria S. Evans Trust dated

May 19, 2004, own abutting lots. Before either party acquired her lot, the prior owners of Adderley's lot expanded the home and built a concrete masonry wall that unintentionally encroached onto Evans' lot by 14 feet. After discovering the encroachment, Evans sued to remove the encroachments and to regain full use of her property. Instead, the court created an equitable easement running with the land that allows Adderley to maintain and keep the existing encroachments, including the wall. It also determined Evans' trespass and nuisance claims were time-barred.

On appeal, Evans challenges parts of the equitable easement only. She argues the equitable easement (1) should not have included the wall, particularly when Evans proposed a plant wall alternative; (2) should have been subject to limits on its scope and duration; and (3) was insufficient, along with the corresponding damages award, to compensate her for the ongoing burdens of ownership.

Because Evans does not appeal other parts of the equitable easement, most notably those covering part of Adderley's home, she necessarily concedes the elements of an equitable easement were met. As a result, her claims about the wall are better understood as going to the easement's scope, and so we address her arguments in that context. We discern no abuse of discretion in including the wall as part of the equitable easement, as (1) substantial evidence supports the trial court's finding that the land beyond the wall is of limited utility to Evans given a city sewer easement that prohibits building on most of the encroachment area and (2) Evans did not present evidence to support her proposed alternative. Even so, we remand for the trial court to clarify any condition(s) under which the equitable easement will terminate and to consider any other potential limits to the scope or duration of the equitable easement it deems appropriate under the circumstances. Because

2

we affirm the equitable easement's inclusion of the wall, the court's judgment on the trespass and nuisance claims stands irrespective of the statute of limitations.

Evans has not persuaded us the $800,000 in damages the court awarded to compensate her for the equitable easement is inadequate, as she identifies no or insufficient record evidence of the issues she now raises.

In her cross-appeal, Adderley asks us to (1) create a bright-line rule setting the date of the complaint as the valuation date for assessing damages flowing from an equitable easement and (2) reduce the damages awarded to Evans accordingly. We decline to do so, as a fixed rule would unnecessarily constrain the trial court's broad discretion to fashion an equitable remedy tailored to the circumstances of an individual case.

We therefore remand with directions to the trial court to clarify and potentially modify the scope and duration of the equitable easement consistent with this opinion and affirm in all other respects.

I.

A.

Evans and Adderley own adjacent properties, lots 87 and 86 respectively in the below image.



Decades ago, the two lots were owned by one woman who, when transferring what would become Adderley's property, moved the property line between the two lots to reserve for herself in lot 87 a stretch of land 14-feet deep and about 155-feet wide that was originally part of lot 86. Ten feet of that 14-foot stretch of land is subject to a city sewer easement, shown above, on which building is prohibited.

Much later, in the late 1990s, the prior owners of Adderley's property remodeled the home. The remodel included adding a bathroom popout—the portion of the home on lot 86 in the above image where the arrow indicates "3.4' residential structure"—and a concrete masonry wall between lots 86 and 87.

4

Although the prior owners hired a contractor and intended everything to be on their property, the contractor apparently relied on the original lot line, which resulted in the wall and 3.4 feet of the popout portion of the residence encroaching onto what would become Evans' property. The encroaching popout area also includes part of the primary closet and another bedroom's closet. The wall is six feet tall along most of its length, with a "little cutout" at the west end where the wall stands about four feet tall. The encroaching area totals 2,168.74 square feet.

## B.

Adderley bought lot 86 in 2002, without knowing the popout and wall encroached onto her neighbor's property.

Evans inherited lot 87 from her mother in 2003, but she did not reside there fulltime until around 2019.

In 2016, when conducting a survey for a different project, Evans discovered the encroachment. When efforts to resolve the matter failed, Evans filed the underlying lawsuit.

In 2020, Evans sued Adderley for (1) trespass to real property, (2) recovery of real property, (3) a permanent injunction to remove the encroachment, (4) quiet title, (5) nuisance, and (6) declaratory relief. She sought removal of the entire encroachment—the wall, the popout, and the area in between—and damages for her ongoing loss of use and enjoyment of her property.

In response, Adderley filed a cross-complaint for (1) equitable easement, (2) declaratory relief, and (3) adverse possession.

## C.

At a bench trial, Evans testified she could extend her home by building up to the sewer easement if the concrete masonry wall were removed—yet

5

she admitted she would "probably not, actually" do so. Adderley testified that removing the wall would negatively impact her because she "would lose [her] privacy and [her] security."

Evidence at trial showed Evans paid property taxes on her lot, including the 14-foot stretch of the encroachment area, but the tax assessment would factor in the minimal value of the 10-foot portion of the encroachment subject to the sewer easement.

Experts on both sides opined about the cost of removing all encroaching features, which would include the concrete masonry wall and part of Adderley's home beyond the popout to account for setback requirements that preclude building right up against a property line. Adderley's construction expert estimated it would cost $1,255,582.96 to demolish the existing encroachments, replace the bathroom "in a different orientation consistent with the setbacks," and repair the landscaping and irrigation. Removing just the wall would cost about $20,000 plus overhead and the cost of debris disposal. Evans' construction expert opined it would cost $130,631.14 to remove and rebuild the wall and another $196,866.26 to reconstruct the bathroom popout area. The residential construction estimate was a "box concept" only, with drywall, a roof, and exterior stucco but without factoring in any inside finishes.

Experts also weighed in on the value of Evans' loss of the use of the encroachment area. Evans' expert calculated a loss of $991,616 as of July 2024, the time of trial. Adderley's expert calculated the loss of use value as $405,000 as of December 2020, when Evans filed her complaint.

In both her trial brief and during counsel's opening statement, Evans expressed her desire to have the entire encroachment removed and the full scope of her property returned to her. Only in closing argument, after the

6

court tentatively informed the parties it was "not inclined to have Ms. Adderley tear apart that whole bathroom, and the pop-out, and all of the construction," did Evans' counsel propose removing only the wall and replacing it with some sort of "plant wall" at an unspecified location "between the two properties, closer to the Adderley residence." Evans' counsel suggested "the fairest way to resolve this dispute" would be to order the wall removed without replacement and "fashion some sort of equitable easement" allowing Adderley to "maintain her residential structure."

D.

The court found against Evans on her claims for trespass and nuisance after concluding those claims were time-barred.

Judgment was entered against Adderley on her cross-claim for adverse possession after the court found Evans had been paying taxes on "at least the 4-foot section of the" encroachment area not subject to the sewer easement.

The court granted Adderley "an equitable easement in perpetuity." It found Adderley was "absolutely innocent" and "did not act negligently" with respect to the encroachment. No public rights would be affected by this equitable easement, as any public rights would be governed by the city's sewer easement.

The court found the hardship of demolishing part of Adderley's home to remove the encroaching popout and comply with required setbacks, which would cost "over a million dollars," represented an "absolutely disproportionate" hardship compared to "any benefit [Evans] would receive by discontinuing the encroachment." The court considered removing and possibly rebuilding the "substantial" concrete masonry wall but concluded doing so would place the wall in the middle of the sewer easement, which could be problematic. And the court did not perceive "a whole lot of utility" in

7

the property Evans would regain if only the wall were removed. Thus, in the end, the court ordered the wall to "remain in place."

In the court's view, the "only hardship" Evans would experience from the continuing encroachment was "financial." It considered the $405,000 estimate by Adderley's expert and adjusted it to "around $600,000" to account for the substantial increase in property values since the complaint's filing. The court criticized Evans' expert's estimate given the lack of supporting information and the court's belief the expert did not consider the "full impact" of the sewer easement on the value of the encroachment area. "[G]iven all the equities and the lack of utility of that strip of land, based on the [sewer] easement, the Court f[ound] that the reasonable compensation for the loss of value to the Evans property [wa]s $800,000."

Imposing the equitable easement disposed of the parties' competing declaratory relief claims and Evans' claims for quiet title and a permanent injunction.

As for Evans' recovery of real property claim, in its statement of decision the court "did not make a ruling" on that cause of action because Evans "retains possession of that real property due to the easement."

The judgment found against Evans on all of her causes of action and granted Adderley "an exclusive equitable easement, which shall run with the land in perpetuity, . . . to maintain and keep in place the existing encroachments, including a portion of [Adderley's] residence, an air conditioning unit, a masonry wall with an iron gate, including all footings for said wall and gate, landscaping irrigation, plumbing, lighting and at-grade hardscape improvements, over, across[,] and through" Evans' property. The court ordered Adderley to pay Evans $800,000 to compensate for the loss of use of her land.

8

## II.

## A.

Evans challenges aspects of the equitable easement the trial court imposed. But we must first emphasize what she does *not* appeal. Evans does not appeal the portion of the equitable easement covering the encroaching part of Adderley's home.

In other words, Evans concedes an equitable easement was warranted here, and thus she concedes all three elements required before a court may impose an equitable easement were satisfied. (See *Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 19 [trial court has discretion to craft equitable easement if (1) trespass was innocent and not negligent, (2) neither property owner nor public will be irreparably injured by easement, and (3) hardship to trespasser from ceasing trespass is greatly disproportionate to hardship to property owner from continuing encroachment].) Evans' claim that the court abused its discretion when it granted an equitable easement as to the wall only is thus better understood as a challenge to the *scope* of the equitable easement. Consequently, we address her arguments about whether the court should have permitted the wall to remain in the context of the equitable easement's scope.

An equitable easement, as the name indicates, is an equitable remedy. "The object of equity is to do right and justice." (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 770 [affirming equitable easement encompassing, among other things, concrete block wall].) Trial courts are thus given "'wide play'" in fashioning equitable remedies, as the "'very essence of equity [is] that its powers should be so broad as to be capable of dealing with novel conditions.'" (*Id.* at pp. 770-771.)

9

An easement "'gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership.'" (*Romero v. Shih* (2024) 15 Cal.5th 680, 692 (*Romero II*).) "[E]ffectively exclusive easements are not impermissible as a general matter." (*Id.* at p. 695.) But "[t]hough an easement may be broadly exclusive, it is nonetheless necessarily limited in scope." (*Ibid.*)

We review an equitable easement for abuse of discretion, resolving all evidentiary conflicts in favor of the judgment. (*Hirshfield,* 91 Cal.App.4th at p. 771.) Our task is to decide if the equitable easement "fell within the trial court's permissible range of options." (*Ibid.*)

1.

Evans contends the trial court should have ordered the wall removed. She faults the court for rejecting her proposed alternative: to remove the concrete masonry wall and to replace it with a plant wall somewhere closer to Adderley's property line. In our view, on this record, including the wall in the equitable easement fell within the permissible range of options.

Evans argues removing the wall would cost "no more than $30,000," far less than the $800,000 the trial court assessed as damages for the loss of use of the entire encroachment area. Adderley counters that, even without the wall, "Evans would still be substantially restricted in her use of any reclaimed area because of the Sewer Easement." And Adderley contends the court did not abuse its discretion by rejecting the plant wall alternative given "Evans submitted no evidence of her last-minute proposal during trial." As a result, the record contains "no evidence of how much it would cost to design and install a plant wall, what it would look like, who would pay for it, or where it could go."

10

The trial court considered removing just the wall, and we discern no abuse of discretion in its decision to include the wall in the equitable easement. The wall could not simply be rebuilt farther back given the sewer easement. And as Adderley notes, Evans did not provide the trial court with evidence sufficient for it to compare the feasibility and cost of ordering a plant wall to be installed instead. As for the cost of removing the wall compared to Evans' loss of use of her property, Evans does not quantify how much of that $800,000 loss of use value she would regain based on the area between the wall and the unspecified location of the proposed plant wall.

Although Evans criticizes the trial court for considering the sewer easement and "discount[ing her] loss of exclusive use" of her property, she has not convinced us doing so constitutes an abuse of discretion. Equity empowers a court to address "'novel conditions.'" (*Hirshfield,* 91 Cal.App.4th at p. 771.) Here, the court acknowledged the sewer easement "create[d] a unique twist," presumably because it limited what could be done on most of the land in the encroachment area. The court cited the sewer easement as the reason why rebuilding the wall elsewhere "just doesn't make sense." Indeed, Evans testified that she could expand her home only as far as, but not beyond, the sewer easement if the wall were removed—and that she had no actual plans to do so. Substantial evidence thus supports the trial court's finding that the land beyond the wall is of limited utility to Evans given the sewer easement and the corresponding inference that losing access to that land was not as great a hardship as might exist under other circumstances.

### 2.

That said, we agree with Evans that the equitable easement could be more narrowly tailored.

"An abundance of caution is warranted when imposing an easement on an unwilling landowner." (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 269.) Thus, "[c]ourts limit the rights of the equitable easement holder both in duration and scope." (*Romero v. Shih* (2022) 78 Cal.App.5th 326, 359 (*Romero I*), reversed and remanded on another ground in *Romero II*, 15 Cal.5th at p. 705.) "The scope of an equitable easement *should not be greater than is reasonably necessary to protect the use interest* of the purported dominant tenement owner." (*Romero I*, at p. 360.)

In *Romero I*, the court rejected a challenge to the equitable easement's scope and duration because it specified the easement "'should terminate if the [property] were to cease its continued use of that land for a driveway, planter[,] and wall/fence.'" (*Romero I*, 78 Cal.App.5th at p. 360, italics omitted.)

Here, the equitable easement runs with the land in perpetuity "to maintain and keep in place the existing encroachments," which are identified in the judgment. Evans claims "Adderley as a practical matter has been granted ownership" of the encroachment area because the equitable easement is "exclusive, perpetual," and "with no time limit." She reads the easement as lacking any "termination triggers tied to cessation of use or to reconstruction that eliminates any conflict," among other things. Adderley disagrees because the equitable easement is limited to maintaining and keeping in place the existing encroachments and runs with the land so any new owner would not be forced to "immediately tear down the house." A necessary corollary of the "maintain and keep in place" easement is that, should Adderley or a future owner of her property decide to rebuild a new home in place of the existing structure, the easement would terminate. Yet Evans' appellate arguments to the contrary persuade us the "best solution is

12

to remand so that the trial court can clarify" any condition(s) under which the equitable easement will terminate. (*Linthicum*, 175 Cal.App.4th at p. 269; see, e.g., *Dolske v. Gormley* (1962) 58 Cal.2d 513, 521 ["[U]pon the removal of the present Dolske house any 'encroachment rights' terminate."].)

On remand, we direct the trial court to consider any other potential limits to the scope or duration of the equitable easement it deems appropriate under the circumstances. The court may solicit the input of the parties to the extent it believes doing so may be necessary or helpful.

3.

Evans also contends the $800,000 in damages the court awarded her "fails to address the ongoing and increasing harms tied to the permanent encroachment," making it "legally insufficient and inequitable." We disagree.

Evans asserts, without any supporting record citation, that she "remains potentially liable for injuries on the encroached land, pays property taxes on land she cannot use, and faces a clouded title that impairs future use and value." She claims such harms and the loss of use of "the walled property" are "not fully compensable by a one-time payment."

Yet Evans does not identify record evidence to support the court either addressing such issues in the equitable easement or incorporating them into the corresponding damages award. Although Evans presented evidence and the court found she paid property taxes on at least some portion of the encroachment area, as far as we can tell, the record contains no evidence of what amount of Evans' property tax was attributable to the encroachment area. Evans' counsel mentioned concerns like taxes, insurance, and third-party liability in closing argument, but counsel's argument is not evidence. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.) Without such

evidence, Evans cannot establish an abuse of discretion on this basis.  (See *Romero I*, 78 Cal.App.5th at p. 358.)

Evans also complains that federal and state income taxes "will consume a significant percentage of any monetary award."  But because Evans did not raise this point until her reply brief, the argument is forfeited.  (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10.)

B.

Evans argues the trial court erred in concluding the wall was a permanent nuisance or trespass, making those claims time-barred under the three-year statute of limitations.  Adderley contends "the issue of the statute of limitations is irrelevant given the trial court awarded an equitable easement to Adderley."  We agree with Adderley, and "we may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court." (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1.)

Creating an equitable easement permits a court, in its discretion, to refuse to eject a trespasser or to enjoin a nuisance.  (*Romero I*, 78 Cal.App.5th at p. 355 [trespass]; *Linthicum*, 175 Cal.App.4th at p. 265 [nuisance].)  Evans concedes a trial court may "deny ejectment" of the subject of a trespass or nuisance claim if the requirements for establishing an appropriate equitable easement are satisfied.  Because we affirm the equitable easement's inclusion of the wall, the court did not err in entering judgment against Evans on that aspect of her trespass and nuisance claims.

C.

In her cross-appeal, Adderley asks us to fix the date for valuing damages attributable to an equitable easement as the date the complaint was

filed and to reduce the damages awarded to Evans accordingly. We decline to constrain the trial court's discretion as requested.

Here, the trial court assessed damages to compensate Evans for the loss of use of her land subject to the equitable easement based on the value as of the time of trial.

Adderley offers two reasons for setting the complaint date as the "proper valuation date."

First, she contends doing so is "consistent with the general rule applicable to a quiet title action," a cause of action that can accompany an equitable easement. A complaint for quiet title must include the "date as of which the determination is sought" and explain why the date should be any "other than the date the complaint is filed." (Code Civ. Proc., § 761.020, subd. (d).)

Second, Adderley warns that using the trial date for valuation "creates uncertainty and an opportunity for manipulation of the timing of the trial date by the parties to try and take advantage of perceived positive or negative trends in the market." In support, she points to *Ferraro v. Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, a case involving property damage from an explosion and fire. *Ferraro* rejected the appellants' bid to use as the measure of damages the present fair market value of the buildings had they not been destroyed because "a rule that invites a plaintiff to use dilatory tactics in order to take advantage of a rising market would encourage a type of pretrial game[s]manship inconsistent with our judicial system." (*Id.* at p. 49.)

Neither reason persuades us. While Adderley styles this issue as a matter of first impression, we find it telling that no court has set a specific date for valuing an equitable easement. As noted above, the "'very essence of

15

equity [is] that its powers should be so broad as to be capable of dealing with novel conditions.'" (*Hirshfield*, 91 Cal.App.4th at p. 771.) We agree with Evans that "[e]quitable remedies are fact-specific, and a rigid rule fixing the valuation date would strip the trial court of the discretion the doctrine requires." *Ferraro* similarly explained that "'there is no fixed, inflexible rule for determining the measure of damages for injury to, or destruction of, property.'" (*Ferraro*, 102 Cal.App.3d at p. 49.) Instead, "'whatever formula is most appropriate in the particular case will be adopted.'" (*Ibid.*) So too for equitable easements. The specter of manipulation Adderley raises is a false equivalence. Our choice is not whether to set the valuation date at the time of filing the complaint or the time of trial but rather whether to set a fixed valuation date at all. And without a fixed valuation date, parties will not be incentivized to manipulate the timing of trial because the court can assess damages based on the equities of the individual case at hand.

Notably, Adderley does not suggest or present any evidence that Evans manipulated the timing of trial to take advantage of market trends. Nor does she challenge the substantial evidence supporting the trial court's damages assessment. Because Adderley challenges the damages award based only on the valuation date and has not shown the court abused its discretion in selecting value as of trial, we will not disturb it.

## III.

We remand with directions to the trial court to clarify and potentially modify the scope and duration of the equitable easement consistent with this opinion.  In all other respects, we affirm.  The parties shall bear their own appellate costs.  (Cal. Rules of Court, rule 8.278(a).)

CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.

17